Date Produced: 12/18/2023

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3549 1415 26. Our records indicate that this item was delivered on 12/14/2023 at 12:02 p.m. in COLUMBUS, OH 43224. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

CV23989463 / 52539244 / DANAHER CORPORATION / 2023-12-27 08:55
Sent To: 4400 EASTON COMMONS WAY STE 125 C/O CT CORPORATION SYSTEM COLUMBUS, OH 432190000

## THE COURT OF COMMON PLEAS, CIVIL DIVISION
## CUYAHOGA COUNTY, OHIO

Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

<u>DIANE CALKINS</u>
**Plaintiff**

V.

<u>DANAHER CORPORATION, ET AL</u>
**Defendant**

**CASE NO.**  CV23989463

**JUDGE**  ANDREW J. SANTOLI

# SUMMONS  SUMC  CM

**Notice ID:**  52539244

| From: | DIANE CALKINS | P1 |
| | 11745 PINEHURST DRIVE | |
| | CHARDON OH 44024 | |

| Atty.: | TRISHA M. BREEDLOVE |
| | 1103 SCHROCK ROAD |
| | SUITE 307 |
| | COLUMBUS, OH 43229-0000 |

| To: | DANAHER CORPORATION | D1 |
| | 4400 EASTON COMMONS WAY STE 125 | |
| | C/O CT CORPORATION SYSTEM | |
| | COLUMBUS OH 43219-0000 | |

**NOTICE TO THE DEFENDANT:**

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff.  You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.us/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

Date Sent: <u>12/07/2023</u>

By_____
**Deputy**

CMSN130



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**December 4, 2023 13:16**

By: TRISHA M. BREEDLOVE 0095852

Confirmation Nbr. 3032203

DIANE CALKINS                               CV 23 989463

vs.

DANAHER CORPORATION, ET AL          **Judge:** ANDREW J. SANTOLI

**Pages Filed:** 35

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| DIANE CALKINS<br>11745 Pinehurst Drive<br>Chardon, Ohio 44024, | ) ) ) | CASE NO.<br>JUDGE: |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES<br>AND REINSTATEMENT** |
| DANAHER CORPORATION<br>2200 Pennsylvania Avenue Northwest<br>Suite 800W<br>Washington, District of Columbia 20037 | ) ) ) ) ) ) | **JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve Also:**<br>Danaher Corporation<br>c/o CT Corporation System<br>4400 Easton Commons Way<br>Suite 125<br>Columbus, Ohio 43219 | ) ) ) ) ) ) ) | |
| -and- | ) ) | |
| PATRICIA KIM<br>c/o Danaher Corporation<br>2200 Pennsylvania Avenue Northwest<br>Suite 800W<br>Washington, District of Columbia 20037 | ) ) ) ) ) ) | |
| -and- | ) ) | |
| BRETT CORNELL<br>c/o Danaher Corporation<br>2200 Pennsylvania Avenue Northwest<br>Suite 800W<br>Washington, District of Columbia 20037, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff, Diane Calkins, by and through undersigned counsel, states and avers the

following for the Complaint against the Defendants:



## PARTIES AND VENUE

1. Calkins is a resident of the City of Chardon, County of Geauga, State of Ohio.

2. At all times herein, Calkins was acting in the course and scope of her employment.

3. Danaher Corporation ("Danaher") is a foreign corporation with its principal place of business located at 2200 Pennsylvania Avenue, Washington, District of Columbia 20037.

4. Danaher is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

5. Upon information and belief, Patricia Kim is a resident of New York, New York.

6. At all times herein, Kim was acting in the course and scope of her employment.

7. Kim was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Danaher who acted directly or indirectly in the interest of Danaher.

8. Kim was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

9. Upon information and belief, Brett Cornell is a resident of Washington, District of Columbia.

10. At all times herein, Cornell was acting in the course and scope of his employment.

11. Cornell was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Danaher who acted directly or indirectly in the interest of Danaher.

12. Cornell was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

13. All of the material events alleged in this Complaint occurred in Cuyahoga County, Ohio.

14. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. §2307.382(A)(1) and (4).

15. Venue is proper pursuant to Civ. R. 3(C)(3) and (6).



16. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

17. Within 300 days of the conduct alleged below, Calkins filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 570-2023-01966 against Danaher ("Calkins EEOC Charge").

18. Calkins dually filed the Calkins EEOC Charge with the EEOC and the Ohio Civil Rights Commission.

19. On or about September 7, 2023, the EEOC issued a Notice of Right to Sue letter to Calkins regarding the Calkins EEOC Charge.

20. Calkins received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1).

21. On or about March 20, 2023, Calkins filed charges of discrimination with the Ohio Civil Rights Commission ("OCRC") against Danaher Corporation (OCRC Charge No. CLE74(49026)(06132023).

22. On or about March 20, 2023, Calkins filed charges of discrimination with the Ohio Civil Rights Commission ("OCRC") against Kim (OCRC Charge No. CLEE4(48585)03242023).

23. On or about March 20, 2023, Calkins filed charges of discrimination with the OCRC against Cornell (OCRC Charge No. CLEE4(48586)03242023).

24. On or about September 10, 2023, the OCRC issued a Notice of Right to Sue letter to Calkins regarding the OCRC Charge Nos. CLEE4(48585)03242023 and CLEE4(48586)03242023 against Kim and Cornell.

25. Calkins Right to Sue letters are hereto as Plaintiff's Exhibit A.



26. Calkins has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letters.

27. Calkins has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

28. Calkins has properly exhausted her administrative remedies pursuant to R.C. § 4112.052.

## **FACTS**

29. Calkins is a former employee of Danaher.

30. Calkins was hired by Danaher in or about March 2004.

31. Calkins was employed by Danaher in the position of Senior Director of Global Transfer Pricing.

32. At the time Danaher terminated Calkins's employment, Calkins was 54 years old.

33. Calkins is female.

34. At the time Defendants terminated Calkins's employment, Calkins had been working for Danaher for over 18 years.

35. At all times referenced herein, Calkins was qualified to perform the essential functions of the Senior Director of Global Transfer Pricing position.

36. From the start of her employment to March 2022, Calkins performed her job duties for Danaher with no disciplinary action.

37. From the start of her employment to March 2022, Calkins received only positive performance reviews from Danaher management.

38. From the start of her employment to March 2022, Calkins received several pay raises from Danaher as a result of her good performance.



39. From the start of her employment to March 2022, Calkins never received any disciplinary action from Danaher management.

40. In or about March 2022, Defendants removed Calkins from her role as Senior Director of Global Transfer Pricing.

41. In or about March 2022, Defendants demoted Calkins.

42. In or about March 2022, Defendants placed Calkins in the role of Senior Director of Tax DBS and Transformation.

43. Calkins did not request the new role.

44. Cornell made the decision to demote Calkins.

45. Cornell is male.

46. Cornell did not make the decision to hire Calkins.

47. Kim participated in the decision to demote Calkins.

48. Calkins wanted to remain in her role as Senior Director of Global Transfer Pricing.

49. In or about March 2022, Defendants promoted Adam Tursi to the role of Senior Director of Global Transfer Pricing, Calkins's former role.

50. Tursi is significantly younger than Calkins.

51. Tursi is male.

52. Tursi replaced Calkins.

53. Cornell participated in the decision to promote Tursi.

54. Kim participated in the decision to promote Tursi.

55. Paragraphs 40 to 54 will be referred to collectively as the "First Adverse Action."

56. The First Adverse Action was an adverse action.

57. The First Adverse Action was an adverse employment action.



58. Danaher did the First Adverse Action because of Calkins's gender.

59. Danaher did the First Adverse Action because of Calkins's age.

60. The First Adverse Action constitutes gender discrimination.

61. The First Adverse Action constitutes age discrimination.

62. The First Adverse Action was a continuous action.

63. On or about September 13, 2022, Defendants informed Calkins that Danaher was ending her employment. ("Second Adverse Action").

64. Cornell participated in the Second Adverse Action.

65. Kim participated in the Second Adverse Action.

66. The Second Adverse Action was an adverse action.

67. The Second Adverse Action was an adverse employment action.

68. Danaher did the Second Adverse Action because of Calkins's gender.

69. Danaher did the Second Adverse Action because of Calkins's age.

70. The Second Adverse Action constitutes gender discrimination.

71. The Second Adverse Action constitutes age discrimination.

72. On or about September 14, 2022, Danaher, as a guise in lieu of termination, presented Calkins with an offer to transfer to PwC ("First Termination Agreement"). (Attached hereto as Exhibit B).

73. Cornell participated in the First Termination Agreement.

74. Kim participated in the First Termination Agreement.

75. The First Termination Agreement was signed by Danaher on September 14, 2022.



76. In the First Termination Agreement, Danaher promised to pay Calkins a one-time separation payment of $314,794.00 within 30 days if Calkins accepted the offer to transfer to PwC ("Separation Payment").

77. In the First Termination Agreement, Danaher promised to pay Calkins a prorata portion of her 2022 annual "incentive compensation bonus" of $54,637.00 if Calkins accepted the offer to transfer to PwC ("Incentive Payment").

78. Danaher based the Incentive Payment on a personal performance factor of 1.0.

79. Danaher based the Incentive Payment on a company financial factor of 1.0.

80. As the First Termination Agreement guaranteed Calkins compensation, this constituted an offer.

81. As the First Termination Agreement guaranteed Calkins compensation, this constituted consideration.

82. As the First Termination Agreement required Calkins to forego further employment with Danaher, this constituted consideration.

83. As Danaher signed the First Termination Agreement, this constituted acceptance.

84. The following day, on or about September 15, 2022, Danaher presented Calkins with a second offer to transfer to PwC ("Second Termination Agreement"). (Attached hereto as Exhibit C)

85. Cornell participated in the Second Termination Agreement.

86. Kim participated in the Second Termination Agreement.

87. The Second Termination changed the language from the First Termination Agreement, which was unfavorable to Calkins.

88. Calkins did not desire to work for PwC.



89.  PwC is an entirely differently corporation than Danaher.

90.  In the Second Termination Agreement, Danaher made the Separation Payment contingent on Calkins working for PwC for one year.

91.  In the Second Termination Agreement, Danaher made the Incentive Payment contingent on Calkins working for PwC for one year.

92.  As a term of Calkins's employment with Danaher, Calkins received annual incentive and performance-based bonus compensation ("ICP Bonuses").

93.  Before the First Termination Agreement, Calkins' ICP Bonuses were based on personal performance factors of 1.25 or greater.

94.  Before the First Termination Agreement, Calkins received ICP Bonuses that amounted to 25% of her annual base salary multiplied by her personal performance factor.

95.  Pursuant to the terms of Calkins's employment with Danaher, Danaher promised to pay Calkins an ICP Bonus amounting to 25% of her annual base salary multiplied by her personal performance factor for the 2022 fiscal year.

96.  Pursuant to the terms of Calkins's employment with Danaher, Danaher promised to pay Calkins an ICP Bonus of over $88,000.00 for the 2022 fiscal year.

97.  Pursuant to the terms of Calkins's employment with Danaher, Calkins expected Danaher to pay her an ICP Bonus amounting to 25% of her annual base salary multiplied by her personal performance factor for the 2022 fiscal year.

98.  Pursuant to the terms of Calkins's employment with Danaher, Calkins expected Danaher to pay her an ICP Bonus of over $88,000.00 for the 2022 fiscal year.

99.  Calkins's personal performance factor had been 1.28 for the 2021 fiscal year.



100. Calkins believed that when Danaher promised to pay her an ICP Bonus amounting to 25% of her annual base salary multiplied by her personal performance factor for the 2022 fiscal year, it would indeed pay her the promised ICP Bonus.

101. Calkins believed that when Danaher promised to pay her an ICP Bonus of over $88,000.00 for the 2022 fiscal year, it would indeed pay her the promised ICP bonus.

102. Calkins's belief was reasonable that Danaher would pay her an ICP Bonus amounting to 25% of her annual base salary multiplied by her personal performance factor for the 2022 fiscal year.

103. Calkins's belief was reasonable that Danaher would pay her an ICP Bonus of over $88,000.00 for the 2022 fiscal year.

104. Calkins relied on Danaher's promise that it would pay her an ICP Bonus amounting to 25% of her annual base salary multiplied by her personal performance factor for the 2022 fiscal year.

105. Calkins relied on Danaher's promise that it would pay her an ICP Bonus of over $88,000.00 for the 2022 fiscal year.

106. Calkins conferred a benefit upon Danaher.

107. Calkins was not fairly compensated for the benefit she conferred upon Danaher.

108. Danaher terminated Calkins's employment on October 10, 2022.

109. But for Defendants demoting Calkins in March 2022, and replacing her with a younger male, she would have remained employed.

110. Defendants terminated Calkins on October 10, 2022.

111. Cornell participated in the Termination.

112. Kim participated in the Termination.



113. Calkins rejected Danaher's Second Termination Letter.

114. Calkins last date of employment for Danaher was October 10, 2022.

115. Defendants terminated Calkins because of Calkins's gender.

116. Defendants terminated Calkins because of Calkins's age.

117. During Calkins' employment with Danaher, she was entitled to stock options.

118. As of September 1, 2022, Calkins had approximately $315,000.00 in stocks that would begin vesting on February 25, 2023 and become exercisable over 5 years. ("Calkins Stock Options")

119. Danaher was aware Calkins Stock Options were set to vest on February 25, 2023, at the time of the First Adverse Action.

120. Danaher was aware Calkins Stock Options were set to vest on February 25, 2023, at the time of the Second Adverse Action.

121. Danaher was aware Calkins Stock Options were set to vest on February 25, 2023, at the time of the First Termination Letter.

122. Danaher was aware Calkins Stock Options were set to vest on February 25, 2023, at the time of the Second Termination Letter.

123. As a result of Defendants' unlawful acts, Calkins has suffered, and will continue to suffer, pecuniary harm.

124. As a result of Defendants' unlawful acts, Calkins has suffered, and will continue to suffer, damages, including but not limited to, back and front pay.

125. As a result of Defendants' unlawful acts, Calkins has suffered, and will continue to suffer, emotional distress.



126. As a result of Defendants' unlawful acts, Calkins has suffered, and will continue to suffer, damages.

## COUNT I: AGE DISCRIMINATION IN VIOLATION OF THE ADEA

127. Calkins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

128. Defendants took adverse employment actions against Calkins based on Calkins's age.

129. In March 2022, Defendants demoted Calkins.

130. Defendants demoted Calkins due to her age.

131. Defendants terminated Calkins employment on October 10, 2022.

132. Defendants termination of Calkins was due to her age.

133. Defendants replaced Calkins with a significantly younger male.

134. Defendants violated the ADEA when they took adverse employment actions against Calkins based on Calkins's age.

135. Defendants violated the ADEA when they engaged in disparate treatment based on Calkins's age.

136. Calkins suffered damages as a proximate result of Defendants' conduct based on Calkins's age.

137. As a direct and proximate result of Defendants' age-based conduct, Calkins has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

138. In discriminating against Calkins based on age, Defendants acted with malice or reckless indifference to the rights of Calkins, thereby entitling Calkins to an award of punitive damages.



## COUNT II: AGE DISCRIMINATION IN VIOLATION R.C. 4112.01 *et seq.*

139. Calkins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

140. Defendants took adverse employment actions against Calkins based on Calkins's age.

141. In March 2022, Defendants demoted Calkins.

142. Defendants demoted Calkin's due to her age.

143. Defendants terminated Calkins's employment on October 10, 2022.

144. Defendants termination of Calkin's was due to her age.

145. Defendants replaced Calkins with a significantly younger male.

146. Defendants violated R.C. § 4112.02(A) when they took adverse employment actions against Calkins based on Calkins's age.

147. Defendants violated R.C. § 4112.02(A) when they engaged in disparate treatment based on Calkins's age.

148. Calkins suffered damages as a proximate result of Defendants' conduct based on Calkins's age.

149. As a direct and proximate result of Defendants' age-based conduct, Calkins has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

150. In discriminating against Calkins based on age, Defendants acted with malice or reckless indifference to the rights of Calkins, thereby entitling Calkins to an award of punitive damages.



## COUNT III: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

151. Calkins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

152. Defendants took adverse employment actions against Calkins based on Calkins's gender.

153. In March 2022, Defendants demoted Calkins.

154. Defendants demoted Calkin's due to her gender.

155. Defendants terminated Calkins's employment on October 10, 2022.

156. Defendants termination of Calkin's was due to her gender.

157. Defendants replaced Calkins with a male.

158. Defendants violated Title VII when they took adverse employment actions against Calkins based on Calkins's gender.

159. Defendants violated Title VII when they engaged in disparate treatment based on Calkins's gender.

160. Calkins suffered damages as a proximate result of Defendants' conduct based on Calkins's gender.

161. As a direct and proximate result of Defendants' gender-based conduct, Calkins has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

162. In discriminating against Calkins based on gender, Defendants acted with malice or reckless indifference to the rights of Calkins, thereby entitling Calkins to an award of punitive damages.

13



## <u>COUNT III: GENDER DISCRIMINATION IN VIOLATION OF R.C. 4112.01 *et seq.*</u>

163. Calkins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

164. Defendants took adverse employment actions against Calkins based on Calkins's gender.

165. In March 2022, Defendants demoted Calkins.

166. Defendants demoted Calkin's due to her gender.

167. Defendants terminated Calkins's employment on October 10, 2022.

168. Defendants termination of Calkin's was due to her gender.

169. Defendants replaced Calkins with a male.

170. Defendants violated R.C. § 4112.02(A) when they took adverse employment actions against Calkins based on Calkins's gender.

171. Defendants violated R.C. § 4112.02(A) when they engaged in disparate treatment based on Calkins's gender.

172. Calkins suffered damages as a proximate result of Defendants' conduct based on Calkins's gender.

173. As a direct and proximate result of Defendants' gender-based conduct, Calkins has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

174. In discriminating against Calkins based on gender, Defendants acted with malice or reckless indifference to the rights of Calkins, thereby entitling Calkins to an award of punitive damages.



## COUNT IV: BREACH OF CONTRACT

### (against Defendant Danaher only)

175. Calkins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

176. As a term of Calkins's employment, Danaher promised to pay Calkins annual ICP Bonuses amounting to 25% of her annual base salary.

177. Pursuant to the terms of Calkins's employment, Danaher owed Calkins an ICP Bonus of 25% of her annual base salary for the 2022 fiscal year.

178. Danaher failed to pay Calkins the ICP Bonus it contractually owed her for the 2022 fiscal year.

179. Danaher terminated Calkins prior to paying her the ICP Bonus owed to her for the 2022 fiscal year.

180. As a term of Calkins's employment, Defendant promised to pay Calkins stock options.

181. Pursuant to the terms of Calkins's employment, Defendant was obligated to pay Calkins stock options on February 25, 2023.

182. Danaher failed to pay Calkins the stock options it contractually owed her.

183. Danaher terminated Calkins prior to paying her the stock options owed to her.

184. Danaher terminated Calkins without just cause.

185. Calkins substantially performed under the terms of her employment.

186. Danaher failed to substantially perform under the terms of Calkins's employment.

187. As a direct and proximate cause of Danaher's conduct, Calkins suffered, and will continue to suffer damages.



## COUNT V: PROMISSORY ESTOPPEL

### (against Defendant Danaher only)

188. Calkins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

189. Danaher guaranteed Calkins annual ICP Bonuses amounting to 25% of her annual base salary.

190. Danaher guaranteed Calkins payment of stock options on February 25, 2023.

191. Danaher made these promises with the reasonable expectation that its promise would induce action or forbearance by Calkins.

192. Calkins, to her detriment, actually and justifiably relied on Danaher's promises by performing this work.

193. An injustice to Calkins may only be avoided through the enforcement of Danaher's promises.

## COUNT VI: UNJUST ENRICHMENT

194. Calkins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

195. Calkins provided Danaher value by working for Danaher as an employee.

196. Calkins expected to be compensated for the value provided to Danaher.

197. Danaher acknowledged, accepted, and benefited from the value provided by Calkins.

198. It would be inequitable for Danaher to enjoy the benefit of the value provided by Calkins without compensating her.



## COUNT VII: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION

### (Against Defendants Cornell and Kim)

199. Calkins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

200. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

201. Cornell aided, abetted, incited, coerced, and/or compelled Danaher's discriminatory adverse employment actions against Calkins.

202. Cornell aided, abetted, incited, coerced, and/or compelled Danaher's discriminatory treatment of Calkins.

203. Cornell violated R.C. § 4112.02(J) by aiding, abetting and inciting discrimination.

204. Kim aided, abetted, incited, coerced, and/or compelled Danaher's discriminatory adverse employment actions against Calkins.

205. Kim aided, abetted, incited, coerced, and/or compelled Danaher's discriminatory treatment of Calkins.

206. Kim violated R.C. § 4112.02(J) by aiding, abetting and inciting discrimination.

207. Calkins suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 et seq.

208. As a direct and proximate result of Defendants' conduct, Calkins has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.



209.  In aiding, abetting and inciting discrimination against Calkins based on her age, Defendants acted with malice or reckless indifference to the rights of Calkins, thereby entitling Calkins to an award of punitive damages.

**DEMAND FOR RELIEF**

WHEREFORE, Diane Calkins demands from Defendants the following:

(a) Issue a permanent injunction:

(i)     Requiring Danaher to abolish discrimination, harassment, and retaliation;

(ii)    Requiring allocation of significant funding and trained staff to implement all changes within two years;

(iii)   Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

(iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

(v)     Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Danaher to restore Calkins to one of the positions to which Calkins was entitled by virtue of Calkins's application and qualifications, and expunge Calkins's personnel file of all negative documentation;



(c) An award against each Defendant of compensatory and monetary damages to compensate Calkins for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Calkins claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 683-7331
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com

*Attorney For Plaintiff Diane Calkins*

## JURY DEMAND

Plaintiff Diane Calkins demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Washington Field Office**
131 M Street, NE Fourth Floor, Suite 4NWO2F
Washington, DC 20507
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/07/2023

**To:** Diane Calkins
11745 Pinehurst Drive
Chardon, OH 44024
Charge No: 570-2023-01966

EEOC Representative and email:     ELIZABETH FLANIGAN
Investigator
elizabeth.flanigan@eeoc.gov

---

## DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 570-2023-01966.

On behalf of the Commission,

Digitally Signed By:Mindy Weinstein
09/07/2023

Mindy Weinstein
Director



PLAINTIFF'S
EXHIBIT
A

**Cc:**
Joseph Turner
233 S. Wacker Drive Suite 8000
Chicago, IL 60606

Patricia Kim
233 S. Wacker Drive Suite 8000
Chicago, IL 60606

Trisha Breedlove
Spitz, The Employee's Law Firm
25825 Science Park Drive, Suite 200
Beachwood, OH 44122


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request

Enclosure with EEOC Notice of Closure and Rights (01/22)

identifying your request as a "FOIA Request" for Charge Number 570-2023-01966 to the District Director at Mindy Weinstein, 131 M Street, NE Fourth Floor Suite 4NWO2F

Washington, DC 20507.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 570-2023-01966 to the District Director at Mindy Weinstein, 131 M Street, NE Fourth Floor Suite 4NWO2F

Washington, DC 20507.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

# OHIO CIVIL RIGHTS COMMISSION

**Board of Commissioners:**
Valerie A. Lemmie – Chair
Lori Barreras
William W. Patmon, III
Madhu Singh
Charlie Winburn



Angela Phelps-White,
Executive Director

| | |
|---|---|
| **Charging Party,**<br>Diane Calkins | ) ) ) ) |
| **v.** | ) ) ) ) |
| | ) ) ) |
| **Respondent,**<br>Patricia Kim | ) ) ) |

**Charge No.** CLEE4(48585)03242023
22A-2023-02898

---

## NOTICE OF RIGHT TO SUE

---

Pursuant to Ohio Revised Code 4112.051, you may file a civil action against the Respondent(s) alleging a violation of Ohio Revised Code 4112. The lawsuit may be filed in any State of Ohio court that has jurisdiction over the matter. Ohio Revised Code 4112.052 and 4112.14 provides that such a civil action must be filed within two years after the date of the alleged discriminatory practice. The time period to file a civil action is tolled during the pendency of the Commission investigation. You are advised to consult with an attorney to determine with accuracy the date by which a civil action must be filed. FOR FEDERAL COURT FILINGS: Notices of Right to Sue under federal law will be issued by the EEOC.

**FOR THE COMMISSION**

*Vera F. Boggs*

Vera F. Boggs
Cleveland Regional Director
615 W. Superior Ave., Suite 885
Cleveland, OH 44113
(216) 787-3150

Date mailed: **October 5, 2023**

# OHIO CIVIL RIGHTS COMMISSION

**Board of Commissioners:**
Valerie A. Lemmie – Chair
Lori Barreras
William W. Patmon, III
Madhu Singh
Charlie Winburn

Angela Phelps-White,
Executive Director

| | | |
|---|---|---|
| **Charging Party,**<br>Diane Calkins | ) <br> ) <br> ) <br> ) | |
| **v.** | ) <br> ) <br> ) | **Charge No.** CLEE4(48585)03242023 <br> 22A-2023-02898 |
| **Respondent,**<br>Brett Cornell | ) <br> ) <br> ) <br> ) <br> ) <br> ) | |

---

## NOTICE OF RIGHT TO SUE

---

Pursuant to Ohio Revised Code 4112.051, you may file a civil action against the Respondent(s) alleging a violation of Ohio Revised Code 4112. The lawsuit may be filed in any State of Ohio court that has jurisdiction over the matter. Ohio Revised Code 4112.052 and 4112.14 provides that such a civil action must be filed within two years after the date of the alleged discriminatory practice. The time period to file a civil action is tolled during the pendency of the Commission investigation. You are advised to consult with an attorney to determine with accuracy the date by which a civil action must be filed. FOR FEDERAL COURT FILINGS: Notices of Right to Sue under federal law will be issued by the EEOC.

**FOR THE COMMISSION**

*Vera F. Boggs*

Vera F. Boggs
Cleveland Regional Director
615 W. Superior Ave., Suite 885
Cleveland, OH 44113
(216) 787-3150

Date mailed: **October 5, 2023**

<u>**Separation Agreement and General Release**</u>

You, **Diane Calkins**, and **Danaher Corporation** (the "Company") agree as follows:

1. <u>**Termination Date**</u>. Your employment termination date shall be **October 10, 2022** (the "Termination Date"). You shall not perform any duties, functions, or services for the Company after the Termination Date.

2. <u>**Payments and other Consideration**</u>. In exchange for your promises in this Separation Agreement and General Release (the "Agreement"), including the general release, and conditioned upon your acceptance of the offer of employment dated September 13, 2022 provided by PricewaterhouseCoopers LLP, if you timely sign and return this Agreement and do not thereafter revoke it as provided below, then:

(a) <u>**Separation Payment**</u>. In recognition of the impact of the Termination Date on treatment of your existing equity under the terms of Danaher's 2007 Stock Incentive Plan, the Company shall pay you the gross amount of three hundred fourteen thousand seven hundred ninety-four Dollars and zero Cents ($314,794.00) ("Separation Payment"). This Separation Payment shall be subject to standard withholding and payroll deductions and shall be paid consistent with the Company's normal payroll cycle beginning no later than thirty (30) days after you sign and return this Agreement provided you do not revoke this Agreement pursuant to Paragraph 14 below. For purposes of this Agreement, the period between the execution of this Agreement and the date of payment of the Separation Payment is the "Separation Period."

(b) <u>**Incentive Compensation Bonus**</u>. The Company shall pay you an ICP bonus payment for 2022 on a pro rata basis using a Personal Performance Factor of 1.0 and Company Financial Factor of 1.0 in the gross amount of fifty-four thousand six hundred thirty-seven Dollars and zero Cents ($54,637.00) ("ICP Pay"). This payment will be made in March 2023 at the usual time at which such payments are made to eligible employees and shall be subject to standard payroll withholding and deductions. For purposes of this Agreement, the period between the execution of this Agreement and the date of payment of the Separation Payment is the "ICP Pay Period."

3. <u>**General Release**</u>. (a) In exchange for the Separation Payment, benefits, and other consideration provided in this Agreement, which you would not be entitled to receive apart from this Agreement, you unconditionally release and forever discharge the Company, and its affiliates, parents, subsidiaries, related companies, successors, predecessors, and assigns, and each of its and their respective officers, directors, partners, shareholders, employees, consultants, agents, representatives, and attorneys, past and present, (collectively referenced herein as "Releasees"), from any and all claims, demands, actions, suits, causes of action, obligations, damages and liabilities of any kind, based on any act, omission, occurrence, or nonoccurrence from the beginning of time to the date you sign this Agreement, including but not limited to claims that arise out of or in any way relate to your hiring, employment and/or separation from employment with the Company. You agree that this general release includes but is not limited to: claims for salary, bonuses, compensation (except as specified in this Agreement), wages, penalties, premiums, severance, vacation pay, equity compensation, or any benefits under the Employee Retirement Income Security Act of 1974, as amended; claims for breach of implied or express employment contracts or covenants, defamation, wrongful separation, public policy violations, emotional distress and related matters, attorney's fees, discrimination or harassment under federal, state or local laws; and claims based on any federal, state or other statute, regulation or ordinance, including but not limited to Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans With Disabilities Act, the Family and Medical Leave Act, and the Worker Adjustment and Retraining Notification Act. You expressly acknowledge that this Agreement resolves all legal claims you may have against the Company and the Releasees as of the date of this Agreement, including but not limited to claims that you did not know or suspect to exist in your favor at the time you sign this Agreement.

(b) Excluded from the general release above are any claims or rights which cannot be waived by law, including claims arising after the date you sign this Agreement and the right to file a charge of discrimination with, or participate in an investigation conducted by, an administrative agency. You understand and agree, however, that you are waiving your right to recover money or other relief in connection with such a charge, whether filed by you or any other individual or entity. You and the Company otherwise intend the general release above to be general and comprehensive in nature and to release all claims and potential claims by you to the maximum extent permitted by law.

(c) **State and Local Waivers.** If you work or reside in California, Montana, North Dakota, or S~~outh Dakota~~ expressly waive the benefit of Section 1542 of the California Civil Code, Montana Code Annotated, S~~~~



**PLAINTIFF'S EXHIBIT**

**B**

North Dakota Century Code, Section 9-13-02, and South Dakota Codified Laws, Section 20-7-11, respectively, and agree that the general release in this Paragraph 3 covers claims arising prior to the date you sign this Agreement which you do not know or expect to exist in your favor at this time. The cited statutes provide: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

If you work or reside in New Jersey, you expressly waive all claims under the Conscientious Employee Protection Act.

If you work or reside in West Virginia, you expressly waive all claims under the West Virginia Human Rights Act. The toll free number for the West Virginia Bar Association is 1-866-989-8227.

If you work or reside in the District of Columbia, you expressly waive all claims under the District of Columbia Human Rights Act.

If you work or reside in Massachusetts, you expressly waive all claims under the Massachusetts Wage Act (G.L. c. 149, §148 *et seq.*).

4. **Covenant Not to Sue.**  You represent and warrant that you have not filed or otherwise initiated any lawsuit with any court relating to any claims released by you under this Agreement, and that you shall never file or initiate any such lawsuit relating to any claims released herein. However, this paragraph shall not apply to any claim by you to enforce this Agreement or to challenge its validity under the ADEA. If you violate this paragraph, you shall pay all legal expenses and costs, including reasonable attorneys' fees, incurred by any Releasee in defending against your suit. Alternatively, if you violate this paragraph, the Company at its option, may require you to return all monies and other benefits and consideration provided to you under this Agreement, except for $1,000. In that event, the Company shall be excused from making any further payments, continuing any other benefits, or providing other consideration otherwise owed under this Agreement.

5. **Restrictive Covenants/Continuing Obligations**.  You acknowledge and re-affirm your continuing obligations under any non-disclosure, confidentiality, intellectual property, non-solicitation and/or noncompetition agreement you previously signed pertaining to the Company's interests, which agreement is hereby incorporated and made a part of this Agreement as Attachment A.

6. **Return of Company Property**.  You agree to return to the Company in good working order all keys, files, records (and copies thereof), equipment (including but not limited to computer hardware, software and printers, wireless handheld devices, cellular phones, SIM cards, external media devices and pagers), Company identification, Company vehicles, Company confidential and proprietary information, and any other Company-owned property in your possession or control and have left and will leave intact all electronic Company documents, including, but not limited to any that you developed or helped to develop during your employment. You further confirm that you have cancelled any accounts for your benefit in the Company's name, including but not limited to credit cards, telephone charge cards, cellular phone and/or pager accounts, and computer.

7. **Non-Disparagement**.  You agree that as a condition of the Separation Payment, benefits and other consideration provided in this Agreement, you shall not make any false, disparaging or derogatory statements to any media outlet, industry group, financial institution, current or former employee, consultant, client or customer of the Company or any other entity or third person regarding the Company or any other Releasee about the business affairs or financial condition of the Company or any other Releasee.

8. **Limitations / Re-employment**.  Except as set forth in this Agreement, you are not entitled to any other post-termination pay, severance, benefits or other consideration. You promise and agree not to seek employment in the future with the Company or any other Releasee. You agree that the Releasees have no obligation to reemploy you or offer you employment in the future and that you shall have no recourse against any Releasee if that Releasee refuses to employ you or offer you employment. Notwithstanding the foregoing, any Releasee may offer to reemploy you in the future, if in its sole discretion, it chooses to do so. You acknowledge that if you become employed by the Company or its subsidiary or affiliate during the Severance Period, all of the pay, benefits and other consideration provided in Paragraph 2 shall cease, and in the case of equity be governed by the applicable stock plan and award agreement.

9. **On the Job Injury**. You represent that you have no job-related illness or injury for which you have not already filed a claim.

10. **Validity**. Should a court of competent jurisdiction determine that any provision of this Agreement is invalid, that provision shall be severed and the rest of this Agreement shall remain in effect.

11. **Confidential Separation Information**. You agree that as a condition of your receiving Separation Payment, benefits and other consideration under this Agreement, the fact, terms and contents of this Agreement and the contents of all communications resulting in this Agreement shall be kept confidential by you and your agents, representatives and family members, and shall not be disclosed except to the extent required by law or as otherwise agreed to in writing by an authorized representative of the Company.

12. **Consequences of Breach.** You acknowledge the Company's right to enforce the above Paragraphs 5 (Restrictive Covenants), 7 (Non-Disparagement), and 11 (Confidential Separation Information) in any court of competent jurisdiction. You further agree that if you breach any of these provisions, the Company will be irreparably harmed as a matter of law and will be entitled to immediate injunctive relief, plus its reasonable attorneys' fees incurred in enforcing the provision breached.

13. **Non-Admission of Liability**. You agree that this Agreement does not admit liability or wrongdoing on the part of the Company or any other Releasee.

14. **Acknowledgments and Revocation Rights**. You acknowledge that you have been given at least twenty-one (21) days to consider this Agreement and that, with this Agreement, the Company has advised you to consult an attorney of your choice before signing this Agreement. You further acknowledge that the Company is providing you payments, benefits, and other consideration under this Agreement in reliance on your representations and promises herein, including the general release in Paragraph 3 above. You understand that you may sign this Agreement at any time within the 21-day period, but in no event earlier than your Termination Date. The offer of Separation Payment, benefits, and other consideration set forth in this Agreement will expire when the 21-day period ends, if this Agreement is not accepted and returned by you during that period. You understand that you have the right to revoke this Agreement after signing it by sending written notice of revocation to Kathleen Archibald, Director, Corporate Human Resources, kathleen.archibald@danaher.com, no later than seven (7) days after you sign this Agreement. You acknowledge that this Agreement shall not be effective or enforceable until the 7-day revocation period expires.

15. **Knowing and Voluntary Release**. You agree that you are signing this Agreement voluntarily and of your own free will and not because of any threats or duress. You affirm that no promises or agreements of any kind (other than those in this Agreement) have been made to or with you by any person or entity that would cause you to sign this Agreement. You have had an opportunity to discuss fully and review the terms of this Agreement with an attorney of your choice. You agree that you have carefully read this Agreement and understand its contents, freely and voluntarily assent to all terms and conditions contained in this Agreement, sign your name of your own free will, and intend to be legally bound by this Agreement.

16. **Cooperation**. During your remaining employment with the Company and after the termination of your employment, with reasonable notice, you agree to cooperate with the Company and to respond to reasonable inquiries and requests for information by the Company in connection with any legal matters in which you are involved or may become involved relating to matters arising during your employment with the Company, including any legal matters in which you may potentially be called as a witness for the Company. Your agreement to cooperate with and to provide responses to such reasonable inquiries and requests for information does not create any employment relationship between you and the Company. The Company agrees to cooperate with you to minimize any disruption to you caused by your cooperation with the Company pursuant to this Paragraph 16.

17. **Applicable Law**. This Agreement shall be interpreted under the laws of Ohio without regard to conflict of laws provisions. You hereby irrevocably submit to and recognize the jurisdiction of that state's courts (or if, appropriate, a federal court located in that state) over any suit, action or other proceeding arising out of, under or in connection with this Agreement or any subject addressed in this Agreement. For purposes of this Agreement, you agree that those courts are the only courts of competent jurisdiction.

18. **Entire Agreement**. This Agreement, including any Attachment A, constitutes the entire understanding and agreement between the parties pertaining to subjects addressed in this Agreement and cancels all previous oral and written agreements and commitments connected to those subjects. This Agreement may not be modified in any manner, except by written amendment signed by duly authorized representatives of both parties. This Agreement is binding upon and shall inure to the benefit of the parties and their respective agents, assigns, heirs, executors, successors and administrators.

19. **Equity/Stock Options/RSUs**. Any stock options, restricted shares, and/or restricted stock units previously granted to you shall be governed solely by the applicable plan and any applicable award statement or agreement.

**BY SIGNING THIS SEPARATION AGREEMENT AND GENERAL RELEASE, YOU REPRESENT AND WARRANT THAT:**

      (a)      **YOU HAVE READ IT;**

      (b)      **YOU UNDERSTAND THAT YOU ARE GIVING UP CERTAIN RIGHTS;**

      (c)      **YOU AGREE WITH EVERYTHING IN THIS AGREEMENT;**

      (d)      **YOU ARE AWARE OF YOUR RIGHT TO CONSULT AN ATTORNEY BEFORE SIGNING THIS AGREEMENT; AND**

      (e)      **YOU HAVE SIGNED IT KNOWINGLY AND VOLUNTARILY.**

**Danaher Corporation**

By: Kathleen Archibald

**Associate's Signature**

Print Name:_____

Date:_____

Title: Director, Human Resources_____

Date: September 13, 2022_____

September 14, 2022

<u>**Delivery By Hand**</u>

Diane Calkins
c/o Danaher Corporation

Re: Offer of Separation Agreement and General Release

Dear Diane,

If you:

    (1) accept the offer of employment dated September 13, 2022 provided to you by PricewaterhouseCoopers LLP ("PwC") no later than September 20, 2022;

    (2) sign and return this letter agreement and general release ("Letter Agreement"), no later than September 20, 2022,

    (3) continue to use your best efforts in your employment with Danaher Corporation (the "Company") until October 10, 2022; and

    (4) do not resign from your employment with the Company and are not terminated by the Company for Cause as defined below,

the Company agrees that it will offer you on October 10, 2022 the Separation Agreement and General Release and payments described therein and attached here as Attachment A, and you agree not to sign it prior to October 11, 2022.

For purposes of this Letter Agreement, the term "Cause" shall mean the following: (i) your dishonesty, fraud, misappropriation, embezzlement, willful misconduct or gross negligence with respect to the Company, or any other action in willful disregard of the interests of the Company; (ii) your conviction of, or pleading guilty or no contest to (1) a felony, (2) any misdemeanor (other than a traffic violation), or (3) any other crime or activity that would impair your ability to perform duties or impair the business reputation of the Company; (iii) your willful failure or refusal to satisfactorily perform any duties assigned to your; or (iv) your willful failure or refusal to comply with Company standards, policies or procedures, including without limitation the Company's Standards of Conduct as amended from time to time.

    1. **<u>General Release</u>**.  (a) In exchange for the benefits, and other consideration provided in this Letter Agreement, which you would not be entitled to receive apart from this Letter Agreement, you unconditionally release and forever discharge the Company, and its affiliates, parents, subsidiaries, related companies, successors, predecessors, and assigns, and each of its and their respective officers, directors, partners, shareholders, employees, consultants, agents, representatives, and attorneys, past and present, (collectively referenced herein as "Releasees"), from any and all claims, demands, actions, suits, causes of action, obligations, damages and liabilities of any kind, based on any act, omission, occurrence, or nonoccurrence from the beginning of time to the date you sign this Letter Agreement, including but not limited to claims that arise out of or in any way relate to your hiring, employment and/or separation from employment with the Company.  You agree that this general release includes but is not limited to: claims for salary, bonuses, compensation (except as specified in this Letter Agreement), wages, penalties, premiums, severance, vacation pay, equity compensation, or any benefits under the Employee Retirement Income Security Act of 1974, as amended; claims for breach of implied or express employment contracts or covenants, defamation, wrongful separation, public policy violations, emotional distress and related



matters, attorney's fees, discrimination or harassment under federal, state or local laws; and claims based on any federal, state or other statute, regulation or ordinance, including but not limited to Title VII of the Civil Rights Act of 1964, as amended, the Americans With Disabilities Act, the Family and Medical Leave Act, and the Worker Adjustment and Retraining Notification Act.  You expressly acknowledge that this Letter Agreement resolves all legal claims you may have against the Company and the Releasees as of the date of this Letter Agreement, including but not limited to claims that you did not know or suspect to exist in your favor at the time you sign this Letter Agreement.

(b) Excluded from the general release above are any claims or rights which cannot be waived by law, including claims arising after the date you sign this Letter Agreement and the right to file a charge of discrimination with, or participate in an investigation conducted by, an administrative agency.  You understand and agree, however, that you are waiving your right to recover money or other relief in connection with such a charge, whether filed by you or any other individual or entity. You and the Company otherwise intend the general release above to be general and comprehensive in nature and to release all claims and potential claims by you to the maximum extent permitted by law.

2. **Applicable Law**.  This Letter Agreement shall be interpreted under the laws of Ohio without regard to conflict of laws provisions.  You hereby irrevocably submit to and recognize the jurisdiction of that state's courts (or if, appropriate, a federal court located in that state) over any suit, action or other proceeding arising out of, under or in connection with this Letter Agreement or any subject addressed in this Letter Agreement.  For purposes of this Letter Agreement, you agree that those courts are the only courts of competent jurisdiction.

**BY SIGNING THIS LETTER AGREEMENT AND GENERAL RELEASE, YOU REPRESENT AND WARRANT THAT:**

    (a)      **YOU HAVE READ IT;**
    (b)      **YOU UNDERSTAND THAT YOU ARE GIVING UP CERTAIN RIGHTS;**
    (c)      **YOU AGREE WITH EVERYTHING IN THIS LETTER AGREEMENT;**
    (d)      **YOU ARE AWARE OF YOUR RIGHT TO CONSULT AN ATTORNEY BEFORE SIGNING THIS LETTER AGREEMENT; AND**
    (e)      **YOU HAVE SIGNED IT KNOWINGLY AND VOLUNTARILY.**

**Danaher Corporation**

_Kathleen Archibald_

By: Kathleen Archibald

**Associate's Signature**

Print Name:_____

Date:_____

Title:_Director, Human Resources_

Date:_September 14, 2022_

**ATTACHMENT A**
(To September 14, 2022 Letter Agreement by and between Diane Calkins and Danaher Corporation)

**Separation Agreement and General Release**

You, **Diane Calkins**, and **Danaher Corporation** (the "Company") agree as follows:

1. **Termination Date**.  Your employment termination date shall be **October 10, 2022** (the "Termination Date"). You shall not perform any duties, functions, or services for the Company after the Termination Date.

2. **Payments and other Consideration**.  In exchange for your promises in this Separation Agreement and General Release (the "Agreement"), including the general release, and conditioned upon your acceptance of the offer of employment dated September 13, 2022 provided by PricewaterhouseCoopers LLP, if you timely sign and return this Agreement and do not thereafter revoke it as provided below, then:

(a) **Separation Payment**.  In recognition of the impact of the Termination Date on treatment of your existing equity under the terms of Danaher's 2007 Stock Incentive Plan, the Company shall pay you the gross amount of three hundred fourteen thousand seven hundred ninety-four Dollars and zero Cents ($314,794.00) ("Separation Payment"). This Separation Payment shall be subject to standard withholding and payroll deductions.  The Separation Payment shall be paid to you in one lump sum on October 10, 2023, provided you timely sign and return this Agreement and do not revoke it pursuant to Paragraph 14 below.  For purposes of this Agreement, the period between the execution of this Agreement and the date of payment of the Separation Payment is the "Separation Period."

(b) **Incentive Compensation Bonus**.  The Company shall pay you an ICP bonus payment for 2022 on a pro rata basis using a Personal Performance Factor of 1.0 and Company Financial Factor of 1.0 in the gross amount of fifty-four thousand six hundred thirty-seven Dollars and zero Cents ($54,637.00) ("ICP Pay"). This payment will be made in March 2023 at the usual time at which such payments are made to eligible employees and shall be subject to standard payroll withholding and deductions. For purposes of this Agreement, the period between the execution of this Agreement and the date of payment of the Separation Payment is the "ICP Pay Period."

3. **General Release**.  (a) In exchange for the Separation Payment, benefits, and other consideration provided in this Agreement, which you would not be entitled to receive apart from this Agreement, you unconditionally release and forever discharge the Company, and its affiliates, parents, subsidiaries, related companies, successors, predecessors, and assigns, and each of its and their respective officers, directors, partners, shareholders, employees, consultants, agents, representatives, and attorneys, past and present, (collectively referenced herein as "Releasees"), from any and all claims, demands, actions, suits, causes of action, obligations, damages and liabilities of any kind, based on any act, omission, occurrence, or nonoccurrence from the beginning of time to the date you sign this Agreement, including but not limited to claims that arise out of or in any way relate to your hiring, employment and/or separation from employment with the Company.  You agree that this general release includes but is not limited to:  claims for salary, bonuses, compensation (except as specified in this Agreement), wages, penalties, premiums, severance, vacation pay, equity compensation, or any benefits under the Employee Retirement Income Security Act of 1974, as amended; claims for breach of implied or express employment contracts or covenants, defamation, wrongful separation, public policy violations, emotional distress and related matters, attorney's fees, discrimination or harassment under federal, state or local laws; and claims based on any federal, state or other statute, regulation or ordinance, including but not limited to Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans With Disabilities Act, the Family and Medical Leave Act, and the Worker Adjustment and Retraining Notification Act.  You expressly acknowledge that this Agreement resolves all legal claims you may have against the Company and the Releasees as of the date of this Agreement, including but not limited to claims that you did not know or suspect to exist in your favor at the time you sign this Agreement.

(b) Excluded from the general release above are any claims or rights which cannot be waived by law, including claims arising after the date you sign this Agreement and the right to file a charge of discrimination with, or participate in an investigation conducted by, an administrative agency.  You understand and agree, however, that you are waiving your right to recover money or other relief in connection with such a charge, whether filed by you or any other individual or

entity.  You and the Company otherwise intend the general release above to be general and comprehensive in nature and to release all claims and potential claims by you to the maximum extent permitted by law.

(c)  **State and Local Waivers.**  If you work or reside in California, Montana, North Dakota, or South Dakota, you expressly waive the benefit of Section 1542 of the California Civil Code, Montana Code Annotated, Section 28-1-1602, North Dakota Century Code, Section 9-13-02, and South Dakota Codified Laws, Section 20-7-11, respectively, and agree that the general release in this Paragraph 3 covers claims arising prior to the date you sign this Agreement which you do not know or expect to exist in your favor at this time.  The cited statutes provide:  "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

If you work or reside in New Jersey, you expressly waive all claims under the Conscientious Employee Protection Act.

If you work or reside in West Virginia, you expressly waive all claims under the West Virginia Human Rights Act.  The toll free number for the West Virginia Bar Association is 1-866-989-8227.

If you work or reside in the District of Columbia, you expressly waive all claims under the District of Columbia Human Rights Act.

If you work or reside in Massachusetts, you expressly waive all claims under the Massachusetts Wage Act (G.L. c. 149, §148 *et seq.*).

4.  **Covenant Not to Sue.**  You represent and warrant that you have not filed or otherwise initiated any lawsuit with any court relating to any claims released by you under this Agreement, and that you shall never file or initiate any such lawsuit relating to any claims released herein.  However, this paragraph shall not apply to any claim by you to enforce this Agreement or to challenge its validity under the ADEA.  If you violate this paragraph, you shall pay all legal expenses and costs, including reasonable attorneys' fees, incurred by any Releasee in defending against your suit.  Alternatively, if you violate this paragraph, the Company at its option, may require you to return all monies and other benefits and consideration provided to you under this Agreement, except for $1,000.  In that event, the Company shall be excused from making any further payments, continuing any other benefits, or providing other consideration otherwise owed under this Agreement.

5.  **Restrictive Covenants/Continuing Obligations.**  You acknowledge and re-affirm your continuing obligations under any non-disclosure, confidentiality, intellectual property, non-solicitation and/or noncompetition agreement you previously signed pertaining to the Company's interests, which agreement is hereby incorporated and made a part of this Agreement as Attachment A.

6.  **Return of Company Property.**  You agree to return to the Company in good working order all keys, files, records (and copies thereof), equipment (including but not limited to computer hardware, software and printers, wireless handheld devices, cellular phones, SIM cards, external media devices and pagers), Company identification, Company vehicles, Company confidential and proprietary information, and any other Company-owned property in your possession or control and have left and will leave intact all electronic Company documents, including, but not limited to any that you developed or helped to develop during your employment.  You further confirm that you have cancelled any accounts for your benefit in the Company's name, including but not limited to credit cards, telephone charge cards, cellular phone and/or pager accounts, and computer.

7.  **Non-Disparagement**.   You agree that as a condition of the Separation Payment, benefits and other consideration provided in this Agreement, you shall not make any false, disparaging or derogatory statements to any media outlet, industry group, financial institution, current or former employee, consultant, client or customer of the Company or any other entity or third person regarding the Company or any other Releasee about the business affairs or financial condition of the Company or any other Releasee.

8.  **Limitations / Re-employment**.  Except as set forth in this Agreement, you are not entitled to any other post-termination pay, severance, benefits or other consideration.  You promise and agree not to seek employment in the future with the Company or any other Releasee.  You agree that the Releasees have no obligation to reemploy you or offer you employment in the future, and you shall have no cause of action against that Releasee if that Releasee refuses to employ you

or offer you employment.  Notwithstanding the foregoing, any Releasee may offer to reemploy you in the future, if in its sole discretion, it chooses to do so.  You acknowledge that if you become employed by the Company or its subsidiary or affiliate during the Severance Period, all of the pay, benefits and other consideration provided in Paragraph 2 shall cease, and in the case of equity be governed by the applicable stock plan and award agreement.

9.  **On the Job Injury**.  You represent that you have no job-related illness or injury for which you have not already filed a claim.

10.  **Validity**.  Should a court of competent jurisdiction determine that any provision of this Agreement is invalid, that provision shall be severed and the rest of this Agreement shall remain in effect.

11.  **Confidential Separation Information**.  You agree that as a condition of your receiving Separation Payment, benefits and other consideration under this Agreement, the fact, terms and contents of this Agreement and the contents of all communications resulting in this Agreement shall be kept confidential by you and your agents, representatives and family members, and shall not be disclosed except to the extent required by law or as otherwise agreed to in writing by an authorized representative of the Company.

12.  **Consequences of Breach**.  You acknowledge the Company's right to enforce the above Paragraphs 5 (Restrictive Covenants), 7 (Non-Disparagement), and 11 (Confidential Separation Information) in any court of competent jurisdiction.  You further agree that if you breach any of these provisions, the Company will be irreparably harmed as a matter of law and will be entitled to immediate injunctive relief, plus its reasonable attorneys' fees incurred in enforcing the provision breached.

13.  **Non-Admission of Liability**.  You agree that this Agreement does not admit liability or wrongdoing on the part of the Company or any other Releasee.

14.  **Acknowledgments and Revocation Rights**.  You acknowledge that you have been given at least twenty-one (21) days to consider this Agreement and that, with this Agreement, the Company has advised you to consult an attorney of your choice before signing this Agreement.  You further acknowledge that the Company is providing you payments, benefits, and other consideration under this Agreement in reliance on your representations and promises herein, including the general release in Paragraph 3 above.  You understand that you may sign this Agreement at any time within the 21-day period, but in no event earlier than your Termination Date.  The offer of Separation Payment, benefits, and other consideration set forth in this Agreement will expire when the 21-day period ends, if this Agreement is not accepted and returned by you during that period.  You understand that you have the right to revoke this Agreement after signing it by sending written notice of revocation to Kathleen Archibald, Director, Corporate Human Resources, kathleen.archibald@danaher.com, no later than seven (7) days after you sign this Agreement.  You acknowledge that this Agreement shall not be effective or enforceable until the 7-day revocation period expires.

15.  **Knowing and Voluntary Release**.  You agree that you are signing this Agreement voluntarily and of your own free will and not because of any threats or duress.  You affirm that no promises or agreements of any kind (other than those in this Agreement) have been made to or with you by any person or entity that would cause you to sign this Agreement.  You have had an opportunity to discuss fully and review the terms of this Agreement with an attorney of your choice.  You agree that you have carefully read this Agreement and understand its contents, freely and voluntarily assent to all terms and conditions contained in this Agreement, sign your name of your own free will, and intend to be legally bound by this Agreement.

16.  **Cooperation**.  During your remaining employment with the Company and after the termination of your employment, with reasonable notice, you agree to cooperate with the Company and to respond to reasonable inquiries and requests for information by the Company in connection with any legal matters in which you are involved or may become involved relating to matters arising during your employment with the Company, including any legal matters in which you may potentially be called as a witness for the Company.  Your agreement to cooperate with and to provide responses to such reasonable inquiries and requests for information does not create any employment relationship between you and the Company.  The Company agrees to cooperate with you to minimize any disruption to you caused by your cooperation with the Company pursuant to this Paragraph 16.

17. **Applicable Law**.  This Agreement shall be interpreted under the laws of Ohio without regard to conflict of laws provisions.  You hereby irrevocably submit to and recognize the jurisdiction of that state's courts (or if, appropriate, a federal court located in that state) over any suit, action or other proceeding arising out of, under or in connection with this Agreement or any subject addressed in this Agreement.  For purposes of this Agreement, you agree that those courts are the only courts of competent jurisdiction.

18. **Entire Agreement**.  This Agreement, including any Attachment A, constitutes the entire understanding and agreement between the parties pertaining to subjects addressed in this Agreement and cancels all previous oral and written agreements and commitments connected to those subjects.  This Agreement may not be modified in any manner, except by written amendment signed by duly authorized representatives of both parties.  This Agreement is binding upon and shall inure to the benefit of the parties and their respective agents, assigns, heirs, executors, successors and administrators.

19. **Equity/Stock Options/RSUs**.  Any stock options, restricted shares, and/or restricted stock units previously granted to you shall be governed solely by the applicable plan and any applicable award statement or agreement.

**BY SIGNING THIS SEPARATION AGREEMENT AND GENERAL RELEASE, YOU REPRESENT AND WARRANT THAT:**

(a) **YOU HAVE READ IT;**
(b) **YOU UNDERSTAND THAT YOU ARE GIVING UP CERTAIN RIGHTS;**
(c) **YOU AGREE WITH EVERYTHING IN THIS AGREEMENT;**
(d) **YOU ARE AWARE OF YOUR RIGHT TO CONSULT AN ATTORNEY BEFORE SIGNING THIS AGREEMENT;**
(e) **YOU HAVE SIGNED IT KNOWINGLY AND VOLUNTARILY; AND**
(f) **YOU WILL NOT SIGN THIS AGREEMENT PRIOR TO OCTOBER 11, 2022**

**Danaher Corporation**

_____        _____
**Associate's Signature**              By: Kathleen Archibald

Print Name:_____          Title: Director, Human Resources

Date:_____          Date: October 11, 2022