## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DIANE CALKINS, | ) | CASE NO.: 1:24-CV-00074 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| | ) | MAGISTRATE JUDGE THOMAS M. |
| v. | ) | PARKER |
| | ) | |
| | ) | **PLAINITFF DIANE CALKINS'** |
| DANAHER CORPORATION, *et al.*, | ) | **COMBINED BRIEF IN** |
| | ) | **OPPOSITION TO MOTIONS TO** |
| Defendants. | ) | **DISMISS FILED BY DEFENDANTS** |
| | ) | **BRETT CORNELL AND PATRICIA** |
| | ) | **KIM** |
| | ) | |
| | ) | **(Request for Oral Argument)** |

## I.   INTRODUCTION

Defendants' Motion to Dismiss is dependent on convincing the Court that Defendants Patricia Kim and Brett Cornell do not fall into the category of "any person." Alternatively, Defendants attempt to convince the Court that R.C. § 4112.02(J), which expressly makes "any person" liable, should be interpreted as not holding individuals liable. Of course, R.C. § 4112.01(A)(1) defines "person" to be all "individuals," which includes, but is not limited to any "manager" or "employee." Thus, as the plain language of Chapter 4112 expressly creates liability for "individuals" under subsections (I) and (J), there is individual liability.

Because Kim and Cornell are persons as well as individuals, and the Amended Complaint avers that they aided, abetted, incited, and directly or indirectly to committed acts of discrimination, they can be held liable under R.C. § 4112.02(J). Defendants' Motion to Dismiss is directly contrary to the plain language of the statute and is frivolous. It should be dismissed.

## II.  <u>MOTION TO DISMISS STANDARD</u>

On a Fed. Civ. R. 12(b)(6) Motion, "all the factual allegations must be viewed in the light most favorable to the plaintiff and the plaintiff must receive the benefit of all reasonable inferences from the facts in the complaint."[1] In this regard, Calkins relies upon and refers this Court to the Facts alleged in her Amended Complaint.[2]

Fed. R. Civ. P. 8(a)(2) provides that the plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Calkins has satisfied this liberal standard. The United States Supreme Court in *Swierkiewicz* upheld the application of Fed.R.Civ.P. 8(a)(2) as the liberal pleading standard employed when faced with a motion to dismiss. In *Swierkiewicz*, the Court rejected the argument that the specific facts of the prima facie case must be alleged in the complaint, instead holding:

> The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement. . . . and This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss. [3]

Instead, the standard the Court applies is the liberal notice pleading of Rule 8(a), which is the starting point of a simplified pleading system adopted to focus litigation on the merits of a claim. Rule 8(a) requires, in pertinent part, a short, plain statement of the claim showing that the pleader is entitled to relief. Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

A motion to dismiss for failure to state a claim can only be granted when it is "clear that no relief could be granted under any set of facts that could be proved consistent with the

---

[1] *Bachochin v. Shire, PLC*, No. 1:06-CV-486, 2008 WL 339810, at *6 (S.D. Ohio Feb. 6, 2008).
[2] ECF #7: Amended Complaint
[3] *Swierkiewicz v. Sorema N.A.*, 53 U.S. 506, 510-11 (2002).

allegations."[4] In fact, as held by the United States Supreme Court, "when a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one."[5]

Based on this standard, a plaintiff must provide enough factual information to state a claim to relief that is "plausible on its face." Viewing the facts in the proper light, Calkins has properly pled facts that, if proven, sufficiently support her claims.

## III.  CORNELL AND KIM ARE INDIVIDUALLY LIABLE UNDER R.C. § 4112.02(J)

### A.  Rules For Statutory Construction

As the United States Supreme Court established long established that "one of the first canons of construction teaches us [is] to avoid [a] war with the common sense."[6] Going all the way back to *Marbury v. Madison*, when tasked with interpreting the construction of statutes, "Courts have always had an 'emphatic' duty 'to say what the law is.'"[7] In *United States v. Am. Trucking Ass'ns*, the United States Supreme Court similarly and more recently held: "In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress."[8] In *United States v. Am. Trucking Ass'ns*, the United States Supreme Court held on point:

> There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases, we have followed their plain meaning.[9]

---

[4] *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).
[5] *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).
[6] *United States v. Howell*, 78 U.S. 432, 436, 20 L. Ed. 195 (1870); see also *In re Laurain*, 113 F.3d 595, 597 (6th Cir. 1997); *Bartlik v. United States Dep't of Labor,* 62 F.3d 163, 165–66 (6th Cir.1995).
[7] *Arangure v. Whitaker*, 911 F.3d 333, 336 (6th Cir. 2018) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803)).
[8] 310 U.S. 534, 542, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).
[9] 310 U.S. 534, 543, 60 S. Ct. 1059, 1063, 84 L. Ed. 1345 (1940).

"If the language of the statute is clear, the court applies the statute as written."[10] As the United States Supreme Court held in *Conn. Nat'l Bank v. Germain*, "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'"[11] Thus, inquiry begins—and will end if unambiguous—with "the plain language of the statute."[12]

Words and their phrases are to be read in context and construed according to common usage.[13] Interpreting Courts must "look first to its language, giving the words used their ordinary meaning."[14] Directly on point, in *TRW Inc. v. Andrews*, the United States Supreme Court held:

> It is "a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (internal quotation marks omitted); see *United States v. Menasche,* 348 U.S. 528, 538–539, 75 S.Ct. 513, 99 L.Ed. 615 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'" (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883))). "[W]ere we to adopt [Andrews'] construction of the statute," the express exception would be rendered "insignificant, if not wholly superfluous." *Duncan,* 533 U.S., at 174, 121 S.Ct. 2120. We are "reluctant to treat statutory terms as surplusage in any setting," *ibid.* (internal alteration and quotation marks omitted), and we decline to do so here.[15]

---

[10] *In re Corrin*, 849 F.3d 653, 657 (6th Cir. 2017); *see also Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 253 (6th Cir. 2020); see also *BedRoc Ltd. v. United States*, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004); *Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 522 (6th Cir. 2021).

[11] 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)); see also *Grand Trunk W. R.R. Co. v. United States Dep't of Lab.*, 875 F.3d 821, 824–25 (6th Cir. 2017).

[12] *The Ltd., Inc. v. Comm'r*, 286 F.3d 324, 332 (6th Cir. 2002); see also *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 283, 131 S.Ct. 1101, 179 L.Ed.2d 37 (2011) (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010)); *Grand Trunk W. R.R. Co. v. United States Dep't of Lab.*, 875 F.3d 821, 824 (6th Cir. 2017).

[13] *State ex rel. Antonucci v. Youngstown City School Dist. Bd. of Edn.*, 87 Ohio St.3d 564, 565, 722 N.E.2d 69, 71 (2000); *Ohio Bus Sales, Inc. v. Toledo Bd. of Edn.*, 82 Ohio App.3d 1, 610 N.E.2d 1164 (1992); O.R.C. § 1.42.

[14] *Artis v. District of Columbia*, 583 U.S. 71, 138 S. Ct. 594, 603, 199 L.Ed.2d 473 (2018) (citation and internal quotation marks omitted); see also *State v. Krutz*, 28 Ohio St.3d 36, 38, 502 N.E.2d 210, 211 (1986); *State v. Waddell,* 71 Ohio St.3d 630, 631, 646 N.E.2d 821 (1995)

[15] 534 U.S. 19, 31, 122 S. Ct. 441, 449, 151 L. Ed. 2d 339 (2001).

To that end, "a construction of one part or provision of a statute which renders another part redundant or superfluous should be rejected; all parts of a statute should, if possible, be given effect."[16] This is referred to as the canon against surplusage.[17]

Likewise, Courts should not interpret a statute so as to create a conflict between its different parts. A "simple lack of harmony between the statutes will not suffice; when two statutes [arguably] conflict to some degree they should be read together to give effect to each if that can be done without damage to their sense and purpose."[18] A court must therefore interpret the statute "as a symmetrical and coherent regulatory scheme,"[19] and "fit, if possible, all parts into a harmonious whole."[20]

"Interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."[21] A court may not look to isolated words or phrases taken out of context to determine a statute's meaning, but instead must account for both the specific text and the broader scheme.[22]

---

[16] *In re Arnett*, 731 F.2d 358, 361 (6th Cir. 1984)(citing *Jarecki v. Searle & Co.,* 367 U.S. 303, 307–308, 81 S.Ct. 1579, 1582–1583, 6 L.Ed.2d 859 (1961)); see also *United States v. Zacks*, 375 U.S. 59, 67–68, 84 S. Ct. 178, 183, 11 L. Ed. 2d 128 (1963); *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 948 (6th Cir. 2022); *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015); *Walker v. Bain*, 257 F.3d 660, 667 (6th Cir. 2001)); *State v. Arnold*, 61 Ohio St. 3d 175, 178, 573 N.E.2d 1079, 1082 (1991).

[17] *Nielsen v. Preap*, 139 S. Ct. 954, 969, 203 L.Ed.2d 333 (2019) (citing A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012)); see also *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 257 (6th Cir. 2020).

[18] *Muller v. Lujan*, 928 F.2d 207, 211 (6th Cir. 1991)(citing *Watt v. Alaska,* 451 U.S. 259, 269, 101 S.Ct. 1673, 1679, 68 L.Ed.2d 80); see also *Davis v. Michigan Department of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989).

[19] *Gustafson v. Alloyd Co.,* 513 U.S. 561, 569, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995).

[20] *FTC v. Mandel Brothers, Inc.,* 359 U.S. 385, 389, 79 S.Ct. 818, 3 L.Ed.2d 893 (1959).

[21] *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 254 (6th Cir. 2020) (quoting *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 432 (6th Cir. 2012); *Lockhart v. Napolitano,* 573 F.3d 251, 261 (6th Cir. 2009)).

[22] *Gundy v. United States*, 139 S. Ct. 2116, 2126, 204 L.Ed.2d 522 (2019) (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U. S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *Utility Air Reg. Grp. v. EPA*, 573 U.S. 302, 321, 134 S.Ct. 2427, 189 L.Ed.2d 372 (2014)).

**B.  The Plain Language Of Ohio Revised Code Chapter 4112 Makes It Clear That Certain Individual Liability Remains.**

The Ohio legislator clearly intended not to eliminate all individual liability from Chapter 4112, which has the purpose of eliminating discrimination because of race, color, religion, sex, military status, familial status, disability, national origin, age, or ancestry. Starting with the title for R.C. § 4112.08, the legislator carefully chose: "Liberal construction; no cause of action for ***certain*** unlawful discriminatory practices related to employment against supervisor, manager, or other employee; exclusive procedures and remedies."[23] Critically, instead of exempting these individuals from liability for *all* unlawful discriminatory practices related to employment, the legislature made clear that these individuals would only be exempted from "*certain*" such unlawful discriminatory practices. In addition to instructing courts to liberally construe the chapter in favor of protecting discriminated workers, Subsection (A) further establishes that the exemption of individual liability only applies to R.C. § 4112.01(A)(24)(a): "However, no person has a cause of action or claim based on an unlawful discriminatory practice relating to employment described in division (A)(24)**(a)** of section 4112.01 of the Revised Code against a supervisor, manager, or other employee of an employer unless that supervisor, manager, or other employee is the employer."[24]

Importantly, the legislature specifically choose to exempt individual liability on R.C. § 4112.01(A)(24)**(a)** claims while specifically choosing not to exempt individual liability from R.C. § 4112.01(A)(24)**(b)**. Thus, individual liability plainly remains on any claims identified in R.C. § 4112.01(A)(24)**(b)**. The Court must "presume that this choice in statutory structure was intentional."[25]

---

[23] *Id*. (**Emphasis** added).
[24] *Id*. (**Emphasis** added).
[25] *N. Fork Coal Corp. v. Fed. Mine Safety & Health Rev. Comm'n*, 691 F.3d 735, 743 (6th Cir. 2012); see also *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 258 (6th Cir. 2020).

With this in mind, R.C. § 4112.01(A)(24) provides:

> (24) "Unlawful discriminatory practice relating to employment" means both of the following:
>
> (a) An unlawful discriminatory practice that is prohibited by division (A), (B), (C), (D), (E), or (F) of section 4112.02 of the Revised Code;
>
> (b) An unlawful discriminatory practice that is prohibited by division (I) or (J) of section 4112.02 of the Revised Code that is related to employment.

Since R.C. § 4112.02(I) and (J) claims are in in R.C. § 4112.01(A)(24)(b), these claims still provide for individual liability. Had the legislature intended to exempt individual liability from R.C. § 4112.02(I) and/or (J), it had multiple opportunities to do so. The legislature could have drafted R.C. § 4112.08 to exempt individual liability under R.C. § 4112.01(A)(24)(a) and (b) but chose to limit the exemption to (A). Alternatively, the legislature could have included the (I) and (J) claims in the list of claims exempted from individual liability in under R.C. § 4112.01(A)(24)(a). Again, it did not do so. Instead, the legislature made the deliberate decision to separate out and distinguish the R.C. § 4112.02 (I) and (J) claims from the remaining claims under (A), (B), (C), (D), (E), and (F), and then only specifically exempt individual liability under the latter set of "certain" claims.

The legislature continued to intentionally distinguish between these two sets of claims. On one hand, each of the (a) group of claims, which expressly precludes individual liability, specifically identify that an entity is liable for the violation. In particular, R.C. § 4112.02(A) is expressly directed at "any employer"; (B) is directed at "an employment agency or personnel placement service"; (C) to "any labor organization"; (D) again, to "any employer"; and so on. On the other hand, both of the (b) group claims - R.C. § 4112.02 (I) and (J) – direct liability at "any person." In full, R.C. § 4112.02 (I) and (J) provide:

It shall be an unlawful discriminatory practice:

(I) For **any person** to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

(J) For **any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice**, to obstruct or prevent any person from complying with this chapter or any order issued under it, **or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice**.[26]

Certainly, by including the word "any", the legislature intended to broaden the liability as broadly as possible as opposed to limiting liability to certain persons (or as Defendants now argue – no persons at all). "The word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive."[27] In *Cudahy Packing Co. of Louisiana v. Holland*, the United States Supreme Court rejected Defendants' argument: "we cannot read 'any or all' as meaning 'some'."[28] And worst yet, Defendants are arguing that "any" means "none." In another example contradicting Defendants' arguments, in *United States v. Rosenwasser*, the United States Supreme Court held:

A broader or more comprehensive coverage of employees within the stated categories would be difficult to frame. The use of the words 'each' and 'any' to modify 'employee,' which in turn is defined to include 'any' employed individual, leaves no doubt as to the Congressional intention to include all employees within the scope of the Act unless specifically excluded.[29]

Moreover, R.C. § 4112.01(A)(1) defines "person" to "include[] **one or more individuals**, partnerships, associations, organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and other organized groups of persons. **"Person" also includes, but is not limited to, any** owner, lessor, assignor, builder, **manager**, broker, salesperson, appraiser, agent,

---

[26] Ohio Rev. Code Ann. § 4112.02 (**Emphasis** added).
[27] *Fleck v. KDI Sylvan Pools, Inc.,* 981 F.2d 107, 115 (3d Cir.1992).
[28] 315 U.S. 357, 361, 62 S. Ct. 651, 654, 86 L. Ed. 895 (1942); see also *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 948 (6th Cir. 2022).
[29] 323 U.S. 360, 362–63, 65 S. Ct. 295, 296, 89 L. Ed. 301 (1945).

**employee**, lending institution, and the state and all political subdivisions, authorities, agencies, boards, and commissions of the state."[30] Yet, Defendants argue that a manager cannot be liable.[31]

Respectfully, it more than boarders on frivolous to assert that R.C. § 4112.02 (I) and (J) do not provide for individual liability against "any person" when the legislature expressly drafted the definition to apply to all "individuals," which includes, but is not limited to *any* "manager" or "employee." Defendants' argument that the statute must be interpreted to exclude individual liability to that no persons are liable would create an absurd result that would be contrary to large portions of Chapter 4112.

And still, the legislature made its intent to keep individual liability even clearer. In legislating how charges are to be filed with the Ohio Civil Rights Commission ("OCRC"), R.C. § 4112.051(C)(1) provides:

> Any person who believes that a person has been the subject of an unlawful discriminatory practice relating to employment may file a charge with the commission alleging either or both of the following:
>
> (a) That an employer, employment agency, personnel placement service, or labor organization has engaged or is engaging in an unlawful discriminatory practice relating to employment;
>
> (b) That **a person** has engaged in an unlawful discriminatory practice relating to employment described in division (A)(24)(b) of section 4112.01 of the Revised Code.[32]

If employer and person meant the same thing, there would be no need list both as they would be redundant and violate the canon against surplusage. To give meaning to both R.C. § 4112.051(C)(1)(a) and (b), it must be interpreted as creating the right to file separate charges against an employer and a person (which again points back to R.C. § 4112.01(A)(24)(b)).

---

[30] Ohio Rev. Code Ann. § 4112.01(A)(1) (**Emphasis** added).
[31] Doc. #12-1, p. 9, PageID 275.
[32] Ohio Rev. Code Ann. § 4112.051 (**Emphasis** added).

Leaving no doubt, R.C. § 4112.052 expressly provides for civil liability against individuals:

(A) Subject to division (B) of this section, and except as provided in division (D)(2) of section 4112.14 of the Revised Code, a person alleging an unlawful discriminatory practice relating to employment in violation of section 4112.02 of the Revised Code may bring a civil action in a court of competent jurisdiction.

*   *   *

(4) With respect to an unlawful discriminatory practice relating to employment described in division (A)(24)(b) of section 4112.01 of the Revised Code, a charge filed with the Ohio civil rights commission or the equal employment opportunity commission satisfies division (B)(1)(a) or divisions (B)(2)(b)(i) and (ii) of this section if both of the following apply:

(a) The charge is related to the conduct alleged in the complaint for the civil action;

(b) The charge is **filed against the person who committed the unlawful discriminatory practice**, the employer of the person who committed the unlawful discriminatory practice, **or both the person who committed the unlawful discriminatory practice and the person's employer**.[33]

Vitally important, both R.C. §§ 4112.051 and 4112.052 were created as new statutes as part of H.B. 352 – meaning that any argument that H.B. 352 intended to and did eliminate all individual liability cannot be reconciled with the undeniable fact that the same law contained entirely new provisions setting forth the prerequisites for *perfecting* individual employment-based discrimination claims. It would be highly unreasonable to suggest that the legislature created a procedure to bring employment claims against individuals but at the same time eliminated such claims. Once more, this would be an absurd result that would render much of Chapter 4112 wholly meaningless.

All but one court that has considered the impact of H.B. 352 has held that claims may still be asserted against individuals under sections (I) and (J).

---

[33] Ohio Rev. Code Ann. § 4112.052 (**Emphasis** added).

In *Burch v. Ohio Farmers Ins. Co.*, Ohio's Fifth District Court of Appeals reversed the dismissal of the plaintiff's former manager, holding that individuals will still "if (1) the supervisor is an employer, or (2) the claim involves retaliation for opposing discrimination, aiding a discriminatory practice, or obstructing a person from complying with the Ohio Civil Rights law."[34] The Ohio Supreme Court initially allowed an appeal but later dismissed it, leaving this holding intact.

Directly on point, in *Williams v. Barton Malow Co.*, in the District Court for the Northern District of Ohio held, the Honorable Judge James G. Carr, Sr. held.:

> Most relevant to this case, H.B. 352 eliminated supervisor liability for some employment discrimination claims by re-defining the term employer. H.B. 352, 133rd Gen. Assemb. (Ohio 2021). The term employer previously included "any person acting directly or indirectly in the interest of an employer." *Id*. at 7. The legislature eliminated that language and declared its intent that "individual supervisors, managers, or employees not be held liable" for **certain** unlawful employment practices under Ohio Rev. Code Ann. § 4112.02, including sex discrimination. *Id*. at 33.
>
> However, **that change does not apply to § 4112.02(I), claims for retaliation, or § 4112.02(J), claims for aiding and abetting discrimination or retaliation**. Those **sections provide that it is unlawful for "any person" rather than "any employer" to engage in retaliation or aiding and abetting discrimination or retaliation**. And the law defines "person" to include broadly "one or more individuals."[35]

Likewise, in *Bostick v. Salvation Army*, Ohio's Eight District Court of Appeals held:

> We note that H.B. 352 does not extend to retaliation claims. See R.C. 4111.02(I) (prohibiting "*any person*" from discriminating "in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section *    *    *.") [36]

---

[34] 2023-Ohio-912, ¶ 33, 211 N.E.3d 202, 209, *appeal allowed*, 2023-Ohio-2407, ¶ 33, 170 Ohio St. 3d 1492, 212 N.E.3d 946, and *cause dismissed*, 2023-Ohio-2518, ¶ 33, 170 Ohio St. 3d 1498, 213 N.E.3d 700.

[35] 581 F.Supp.3d 923, 927 (N.D.Ohio, 2022)(**Emphasis** added); *See also*; Norris v. G4S Secure Sols. (USA), Inc., N.D. Ohio No. 1:21-cv-1022, 2021 U.S. Dist. LEXIS 121306, at *4-5 (June 30, 2021) (same) ("Section 4112.02(I), unlike [R.C.] 4112.02(A), applies to 'any person' . . . .").

[36] 2023 -Ohio- 933, ¶ 73, 2023 WL 2609084, at *11 (Ohio App. 8 Dist., 2023)(*Emphasis* in original).

In *Anderson v. Bright Horizons Children's Centers, LLC*, the Tenth District Court of Appeals expressly rejected the very "derivative" or "rebranding" position taken by Defendants in this matter:

> Anderson argues that the trial court erred in granting Delaney summary judgment on her claim that Delaney violated R.C. 4112.02(J) by aiding and abetting Bright Horizons in discriminating against her. R.C. 4112.02(J) makes it unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." **Delaney argues this claim fails because it is derivative of Anderson's other claims. Because we have concluded that Anderson's claim for "regarded as" disability discrimination should have survived summary judgment, this claim should also survive summary judgment**. Accordingly, we sustain Anderson's fifth assignment of error.[37]

Further supporting individual liability, in *Martcheva v. Dayton Board of Education*, Ohio's Second District Court of Appeals held that allegations that a person actively participated in or facilitated discrimination are sufficient to make out a claim for aiding and abetting under Section (J):

> R.C. 4112.02(J) states that no person shall "aid, abet, incite, compel, or coerce the doing of any act declared * * * to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter * * *, or to attempt directly or indirectly to commit any act declared * * * to be an unlawful discriminatory practice." Courts have held that **to aid and abet, a person must "actively participate in, or otherwise facilitate, another's discriminatory act in violation of R.C. 4112.02**."[38]

Likewise, in *Spahija v. Rae-Ann Holdings, Inc.,* the Honorable Judge Donald Nugent rejected arguments by the employer that the plaintiff had merely "rebranded" his claims against his supervisors as section (J) claims:

> In his Complaint, Mr. Spahija states generally that his claims arise under Ohio Revised Code § 4112 et seq. and argues, in briefing, that he has alleged valid claims against Individual Defendants Sue and John Griffiths under Section 4112.02(J).
>
> * * *
>
> Section 4112.01(A)(1) defines person, in relevant part, as "one or more individuals, ... corporations, legal representatives, ... and other organized groups of persons" and

---

[37] 2022 -Ohio- 1031, ¶ 75, 2022 WL 910157, at *14 (Ohio App. 10 Dist., 2022).

[38] 179 N.E.3d 687, 706, 2021 -Ohio- 3524, ¶ 74 (Ohio App. 2 Dist., 2021)(citing *Johnson-Newberry v. Cuyahoga Cty*., 2019-Ohio-3655, 144 N.E.3d 1058, ¶ 21 (8th Dist.) (**Emphasis** added).

"also includes, but is not limited to, any owner, ... agent, employee." As set forth above, Mr. Spahija alleges that he sent an email to Individual Defendants Sue and John Griffiths – the Principals of Rae Ann who were also his managers/supervisors – requesting a reasonable religious accommodation during holy month of Ramadan; that his request was refused by Sue and John Griffiths; and, that Rae-Ann and Individual Defendants Sue and John Griffiths, wrongfully retaliated against him, terminating his employment. **Individual Defendants Sue and John Griffiths are "persons" – they are individuals/owners/agents/employees of Rae Ann and the decision-makers relative to Mr. Spahija's termination**. The allegations set forth in the Complaint are sufficient to state a claim against the Individual Defendants under Section 4112.02(J).

Iin *Argyriou v. David A. Flynn, Inc*., the Honorable Judge J. Phillip Calabrese distinguished claims brought under Ohio R.C. § 4112.02(A) and (J), holding that while claims brought under (A) may only be brought against an employer, (J) claims may be brought against individuals who aid or abet **the employer's violation of division (A)**:

> What is clear is that Section 4112.02(J) on its face applies to persons—unlike Section 4112.02(A), which applies only to employers. *Gibbs v. Meridian Roofing Corp*., No. 1:17-cv-245, 2017 WL 6451181, at *6 (S.D. Ohio Dec. 18, 2017); accord *Siwik v. Cleveland Clinic Found*., No. 1:17-cv-1063, 2019 WL 1040861, at *27 (N.D. Ohio Mar. 5, 2019) ("§ 4112.02(J) does provide for employees...to be held liable for aiding and abetting its employer's discriminatory or retaliatory practice."). Given the close relationship between Mr. Flynn and his company, and because he was the individual who terminated Ms. Argyriou, a reasonable jury could find on this record that Mr. Flynn violated Section 4112.02(J) and has individual liability for Ms. Argyriou's termination. Therefore, summary judgment for Mr. Flynn is not warranted on this claim either.[39]

Respectfully, Defendants argument on individual liability is wrong and completely at odds with the plain language of Chapter 4112, which clearly provides that while some claims may not be brought against individuals, others, specifically those under provisions (I) and (J), may still be brought. This conclusion is not open to differing opinions nor a matter of interpretation but supported by the plain, inconvertible text of Chapter 4112 and its subchapters.

Indeed, Courts have held that for a person to be held liable for aiding and abetting under Ohio R.C. § 4112.02(J), they merely must be "involved in *or* (emphasis added) actually [have]

[39] 2021 WL 766865, at *15 (N.D.Ohio, 2021).

made the decision to [discriminate or] retaliate against [the employee]."[40] Further, Ohio R.C. § 4112.02(J) **is not limited to aiding and abetting**, as it also makes it unlawful for any person to "incite, compel, or coerce" discrimination; to obstruct or prevent any person from complying with Ohio R.C. § 4112.02 et seq; or "to attempt directly or indirectly to commit any act" of discrimination.

## IV.  DEFENDANTS' LIMITED LEGAL SUPPORT HAS NO MERIT.

Contrary to the very basic tenants of statutory construction, Defendants wholly ignore the actual language of contained in Chapter 4112 and instead argue what they think the law should be based on their policy beliefs and legislative history. The United States Court of Appeals for the Sixth Circuit has already rejected this approach in *In re Koenig Sporting Goods, Inc.*, where it held that "[w]hen a statute is unambiguous, resort to legislative history and policy considerations is improper."[41]

Even more problematic, Defendants quote the legislative intent but ignore the plain reading that it directly contradicts their position.[42] Specifically, Acts 2020, HB 352, § 3, as quoted by Defendants provides:

> The General Assembly, in amending section 4112.01 and division (A) of section 4112.08 of the Revised Code pursuant to this act, hereby declares its intent to supersede the effect of the holding of the Ohio Supreme Court in *Genaro v. Central Transport, Inc.*, 84 Ohio St.3d 293 (1999) and to follow the holding in *Wathen v. General Electric Co.*, 115 F.3d 400 (1997) **regarding the definition of 'employer'** for purposes of Chapter 4112. of the Revised Code. The General Assembly further declares its intent that individual supervisors, managers, or employees **not be held liable under Chapter 4112 of the Revised Code for unlawful discriminatory practices relating to employment that are described in division (A)(24)(a) of section 4112.01** of the Revised Code, as amended by this act.[43]

---

[40] *Oster v. Huntington Bancshares Inc.*, Case No. 2:15-CV-2746, 2017 WL 2215462, at *22 (S.D. Ohio May 19, 2017) (quoting *Cummings v. Greater Cleveland Reg'l Transit Auth.*, 88 F. Supp. 3d 812, 820 (N.D. Ohio 2015)).
[41] 203 F.3d 986, 988 (6th Cir. 2000) (citing *Forbes v. Lucas (In re Lucas)*, 924 F.2d 597, 600 (6th Cir.1991)); see also *United States v. Missouri Pac. R. Co.*, 278 U.S. 269, 278, 49 S. Ct. 133, 136, 73 L. Ed. 322 (1929).
[42] Doc #: 12-1, p. 11, PageID #: 272.
[43] Acts 2020, HB 352, § 3 (**Emphasis** added).

While Defendants would have the Court believe that *Wathen* now controls on all aspects of its holding (despite not addressing Ohio law at all), the legislature clearly limited its import to just the definition of employer. Indeed, this is consistent with the stated statutory intent, including superseding *Genaro* – to individuals being vicariously liable as the "employer" for all acts of employment discrimination. Defendants' argument on legislative history and intent further willfully ignores that the actual stated intent to limit individual liability is again expressly limited to in R.C. § 4112.02(A)(24)(a) only – leaving "any person" still liable for their own acts of discrimination under the claims described in R.C. § 4112.02(A)(24)(b) – the R.C. § 4112.02(I) and (J) claims.

Similarly, Defendants ignore the actual language of R.C. § 4112.02(J). While Defendants focus on the (J) language only provides for liability when an individual has "aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice," (J) also provides liability for "any person" who "directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice." Thus, "any person," including but not limited to individuals, all managers, and all employees, are expressly and directly liable for their own acts of discrimination and retaliation as well as those acts of discrimination that they help or convince another to undertake. Thus, as the Complaint alleges that Kim and Cornell both directly engaged in discriminatory acts as well as aiding, abetting, and inciting such acts, the Amended Complaint states proper causes of action.

Next, Defendants make an oxymoronic argument that could only lead to absurdity. Specifically, Defendants argue that it was "the General Assembly's intent to extinguish individual liability for managers and supervisors acting in the course and scope of their employment."[44]

---

[44] Doc #: 12-1, p. 6, PageID# 272 (argument made throughout).

Given that every employment action, such as firing, demoting, or cutting wages, would implicitly be within the scope of employment, Defendants' argument would create a donut hole that would swallow the entire donut – meaning that there could never be any individual liability. Beyond creating an absurd result, this argument is not supported by any actual language as the phrase "course and scope" do not appear anywhere in Chapter 4112 at all.

To appear as if Defendants were not simply creatively manufacturing a "course and scope" argument frivolously out of thin air, they blatantly misrepresent to this Court that the Southern District Court of Ohio Eastern Division held as much in *Sherman v. Pub. Emps. Ret. Sys.*[45] This is egregiously not true. At most, the *Sherman* opinion provides: "The **Individual Defendants' Motion raises four primary arguments**: (1) Ohio's Employment Law Uniformity Act ("ELUA") eliminated individual liability for managers and supervisors acting in the course and scope of their employment."[46] This is the only mention of "course and scope" in the entire opinion. While the one mention of the concept is better than the zero times it is mentioned in Chapter 4112, it is egregious that Defendants are attempting to pass off the identification of a defendant's argument as an actual holding.

The reason Defendants misrepresented the holding of *Sherman* is even more troublesome. *Sherman* is the only case in Ohio or federal courts that dismissed the claims for individual liability brought by an employee that was fired after the effective date of H.B. 352. All of Defendants' other cases either predate the H.B. 352 amendments and/or are federal cases interpreting federal law and have nothing to do with Chapter 4112 – meaning that Defendants researched deep enough to get passed all the above on point case law directly rejecting their arguments to reach cases where they could fabricate an argument by analogy with *Sherman* serving as the linchpin allowing them

---

[45] No. 2:22-CV-04161, 2023 WL 6307632, at *11 (S.D. Ohio Sept. 28, 2023)
[46] *Id*. at *10 (**Emphasis** added).

to claim some semblance of good faith. However, Defendant apparently recognized that sharing the actual holding of *Sherman* destroyed any appearance of good faith – so they hid the actual holding from the Court. Specially, the actual holding demonstrates the Southern District Court of Ohio Eastern Division made a simple reading mistake. While the opinion first cites to R.C. § 4112.08(A) correctly conclude that individual liability was eliminated for claims "described in division (A)(24)(a) of section 4112.01," the Southern District Court then accidently absorbed the R.C. § 4112.02(I) and (J) claims into the description provided in R.C. § 4112.02(A)(24)(a):

> Ohio Revised Code **§ 4112.01(A)(24)(a)** defines "unlawful discriminatory practice relating to employment" as an unlawful discriminatory practice prohibited by § 4112.02(A)–(F), **and** an unlawful discriminatory practice prohibited by § 4112.02(I)–(J) related to employment. Accordingly, supervisors and managers cannot be held individually liable for employment discrimination or retaliation.[47]

But R.C. § 4112.02(I) and (J) are not described in R.C. § 4112.02(A)(24)(a). They are listed in subsection (b). This is not a matter of disputed interpretation. This is simply a plain misreading of the statute. Unfortunately, when Southern District Court made this oversight, it halted its analysis and did not consider any of the other language that supported individual liability. In truth, *Sherman* is a simple mistake that should not be compounded by being held up or relied upon as precedent.

Certainly, if Defendants were to be asked by this Court at an oral argument whether in R.C. § 4112.02(A)(24)(a) lists the (I) and (J) claims, they would have to concede that it does not. Thus, if asked to concede that the Southern District Court mistakenly included the (I) and (J) claims in the R.C. § 4112.02(A)(24)(a) description, they would have to yield. If Defendants will not yield their position now, the Court should ask defense counsel directly by setting oral argument.

---

[47] *Id*. (**Emphasis** added).

## V.   **KIM IS SUBJECT TO SPECIFIC JURISDICTION IN OHIO.**

Kim subjected herself to this Court's jurisdiction. Calkins Amended Complaint contains *over* twenty averments directly related to Kim.[48] Specifically, Calkins Amended Complaint plead the following[49]:

> 67. On or about September 13, 2022, Defendants [including Kim] informed Calkins that Danaher was ending her employment. ("Second Adverse Action").

> 69. Kim participated in the Second Adverse Action.

> 76. On or about September 14, 2022, Danaher, as a guise in lieu of termination, presented Calkins with an offer to transfer to PwC ("First Termination Agreement"). (Attached hereto as Exhibit B).

> 78. Kim participated in the First Termination Agreement.

> 79. Kim participated in the creation of Exhibit B.

> 80. Kim participated in deciding the language of the Second Termination Agreement.

> 91. The following day, on or about September 15, 2022, Danaher presented Calkins with a second offer to ransfer to PwC ("Second Termination Agreement"). (Attached hereto as Exhibit C)

> 93. Kim participated in the Second Termination Agreement.

> 94. Kim participated in the creation of Exhibit C.

> 95. Kim participated in deciding the language of the Second Termination Agreement.

> 118. On or about October 10, 2022, Defendants [including Kim] terminated Calkins.

> 121. Kim participated in the Termination.

> 126. Kim terminated Calkins because of Calkin's gender.

> 129. Kim terminated Calkins because of Calkin's age.

"General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'"[50] In

---

[48] *See generally* Calkins Amended Complaint.
[49] Calkins Amended Complaint @ ¶ 69, 76, 78-80, 91, 93-96, 118 121, 126, 129
[50] *Third Nat'l Bank in Nashville v. Wedge Group Inc*., 882 F.2d 1087, 1089 (6th Cir. 1989)

contrast, specific jurisdiction is proper under circumstances "where a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.[51] Specific jurisdiction may be based on a single act.[52] When considering whether specific jurisdiction exists to comport with the Due Process Clause, first, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.[53] Second, the cause of action must arise from the defendant's activities there.[54] Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.[55]

Here, admittedly Kim was responsible for creating the documents that ultimately lead to Calkins' termination.[56] Calkins Amended Complaint avers that Kim participated in Calkins First and Second Termination Agreement and well as her termination. Moreover, "personal jurisdiction does not require physical presence in the forum state."[57] Calkins Amended Complaint avers that Kim was a key decision maker in her termination, created the documents that lead to her termination, thereby essentially transacting business within Ohio.

Personal jurisdiction is predicated, at least in part, on diversity - namely on 28 U.S.C. § 1332 - the "plaintiff must make a two-pronged showing that (1) the defendant is amenable to suit under the forum state's long-arm statute; and (2) due process requirements of the Constitution are

---

[51] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)
[52] *Nationwide, 91 F.3d at 794* (*citing McGee v. Int'l Life Ins. Co*., 355 U.S. 220, 222, 2 L. Ed. 223, 78 S. Ct. 199 (1957)).
[53] *Southern Machine Co. v. Mohasco Indus., Inc*., 401 F.2d 374, 380 (6th Cir. 1968).
[54] *Id*.
[55] *Id*.
[56] Kim Affidavit @ ¶ 15
[57] *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236, 638 N.E.2d 541, 544 (1994).

met."[58] In addition, where, as here, "a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant [of] due process"[59]. The Northern District of Ohio points out in *The Ohio Bell Telephone Co. vs. CoreComm Newco, Inc.,* the non-moving party need only make a general showing that the moving party is subject to personal jurisdiction under Ohio's Long-arm Statute; and, once that has been accomplished the "Court must further determine whether jurisdiction would be properly exercised in this particular case [pursuant to the test articulated in *Southern Machine Co.*"[60] Calkins submits that a threshold case can be made out for the exercise of the Court's personal jurisdiction over Kim here under Ohio's Long-arm Statute.

Ohio's Long-arm Statute, Ohio Revised Code§ 2307.382(A)(1), permits jurisdiction over any corporation or person who, *inter alia,* transacts business in this State or causes tortious injury in this State. Under Ohio Rev. Code § 2307.382:

(A)     A Court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting business in this state;
(2) Contracting to supply services or goods in this state;

**(3) Causing tortious injury by an act or omission in this state;**

**(4) Causing tortious injury in this state by an act or omission outside this state if [she] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state**[61]

---

[58] *Walker vs. Concory,* 79 F.Supp.2d 827, 829 (N.D. Ohio 1999).

[59] *Bird vs. Parsons,* 289 F.3d 865, 871 (6th Cir. 2002); *Bridgeport Music, Inc. vs. Still in the Water Publishing,* 327 F3d. 472, 477 (6th Cir. 2003) *(citing Bird vs. Parsons,* 289 F.3d, 871 (6th Cir. 2002). See The Ohio Bell Telephone Co. vs. CoreComm Newco, Inc.,* 2002 WL 178772 (N.D. Ohio)

[60] *Id.* at page 2 *citing Southern Machine Co. vs. Mohasco Industnes, Inc.,* 401 F.2d 374, 381 (6th Cir. 1968)]."

[61] Ohio Rev. Code § 2307.382 (**Emphasis** added)

The Ohio Supreme Court has interpreted the term "transacting business" for purposes of personal jurisdiction broadly as follows:

> "Transact," as defined by Black's Law Dictionary (5 Ed.1979) 1341, " * * * means to prosecute negotiations; to carry on business; to have dealings * * *. The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion * * *."[62]

The narrow question here is whether the Calkins is able to make a prima facie showing that Kim <u>did in fact transact business in Ohio</u> (pursuant to Ohio Revised Code § 2307.382 (A)(1) and/or whether the Kim has caused tortious injury by an act or omission in this State (pursuant to Ohio Revised Code§ § 2307.382(A)(3) and 2307.382(A)(4)). Calkins submits that the tortious injury herein alleged in the original Complaint and in the First Amended Complaint, in part, is subsumed in "transacting business," for it was Kim's actions that lead to Calkins' termination. A District Court may exercise personal jurisdiction over a person who, *inter alia,* acts directly or by an agent as to a cause of action arising from the person's transacting any business in Ohio or causes tortious injury by an act or omission in this State or causes tortious injury in Ohio by an act or omission outside this State if the party regularly does or solicits business in this State or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this State.[63]

### 1. *"Purposefully Availed" Criteria*

To demonstrate that Kim "purposefully availed" herself to the State of Ohio, Calkins must make a prima facie showing that Kim's "contacts" with Ohio proximately resulted from her own actions, and that those contacts created a "substantial connection" with the State.[64] Calkins has

---

[62] *Kentucky Oakes Mall Co. v. Mitchell's Formal Wear, Inc*., 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 480 (1990), cert. denied, 499 U.S. 975 (1991).
[63] *See Bath & Boqy Works,* 2000 WL 1810478 (S.D. Ohio) at page 3
[64] See *Means*, 836 F.3d at 649.

met this burden as detailed in her averments *supra*. Calkins has alleged, in other words, that Kim reached into Ohio by participating in creating the documents that ultimately lead to Calkins' wrongful termination. Accordingly, Calkins has met her prima facie burden to demonstrate that Kim manifested a "substantial connection" with the State of Ohio that ultimately causes her to be subject to the jurisdiction of Ohio courts.[65]

### 2. *"Arises From" Criteria*

Calkins has likewise met the second prong of the *Southern Machine* test. That is, she has sufficiently demonstrated that her causes of action—her termination—"arose from" Kim's discriminatory actions.[66]

### 3. *"Substantial Connection" and "Reasonableness"*

Calkins has sufficiently demonstrated that this Court's exercise of personal jurisdiction over Kim would be "reasonable."[67] This is partially due to Calkins satisfaction of the first two prongs of *Southern Machine*.[68] Nevertheless, the Court must also consider additional factors, "including 'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.' "[69]

First, it is Kim's burden. Generally, this factor seeks to determine whether the "court's exercise of personal jurisdiction over a nonresident defendant" would render that defendant's ability to litigate "so gravely difficult and inconvenient" that it would be at a "severe" and "unfair"

---

[65] See *Neogen Corp.*, 282 F.3d at 889.

[66] *See* Calkins Amended Complaint @ ¶ 69, 76, 78-80, 91, 93-96, 118 121, 126, 129

[67] *See Means*, 836 F.3d at 649.

[68] *See Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996) (noting that, once a plaintiff demonstrates that his or her cause of action "arose from" the defendant's "purposeful" contacts with the forum state, "an inference arises that [the] third factor is also present).

[69] *Id.*, quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169-70 (6th Cir. 1988).

disadvantage.[70] Here, although Kim is living in New York and would certainly bear some convenience-related burdens if required to litigate Calkins claims in Ohio,[71] does not mitigate Calkins allegations that Kim purposefully reached into Ohio (thereby taking advantage of its laws and its people) by supporting and dictating documents that ultimately lead to an adverse action again Calkins, who resides in Ohio. Kim, as discussed, reasonably should have expected that this business activity could cause her to be subject to jurisdiction in an Ohio court where her and her employer conducted significant business.[72] Accordingly, Kim would not be so burdened as to be at a "severe" and "unfair" disadvantage if she were forced to litigate in this forum.

The second and third factors likewise suggest that this Court should "reasonably" exercise personal jurisdiction over Kim. Ohio has a particular social and economic interest in providing those who work within its bounds a forum to recover lost wages and other damages from wrongful terminations, wrongful constructive discharges, illegal disability discrimination, and illegal retaliation. This interest is magnified by the fact that Kim's alleged violation of Ohio's employment discrimination and retaliation laws are at issue.[73]

Accordingly, any burden Kim faces by having to litigate this case in Ohio is outweighed by "Ohio's interest in business being conducted fairly and legally within its borders and [Named] Plaintiff's interest in pursuing relief for [her] alleged damages in [Ohio]."[74] So too is it overcome by Calkins clear interest in obtaining convenient and effective relief in the State of Ohio, which is where she lives, where she was employed by Defendants, and where Defendants' violations of the

---

[70] See 21 C.J.S. Courts § 48.

[71] This is heavily mitigated by the use of technologies that allow almost everything except for a jury trial to be conducted remotely by phone or video conferencing.

[72] Compuserve, 89 F.3d at 1264.

[73] See Plaintiff's Complaint at ¶¶ 188-204, 214-222, and 231-238.

[74] Ault Int'l Med. Mgmt., LLC v. City of Sevierville, No. 2:19-cv-02739, 2020 WL 1244190, at *3 (S.D. Ohio Mar. 16, 2020) (citing Kendle v. Whig Enters., LLC, No. 2:15-cv-1295, 2016 WL 5661680, at *8 (S.D. Ohio Sept. 30, 2016)).

federal and state anti-discrimination laws occurred.[75] In their totality, Calkins and Ohio's joint interest in having an Ohio court exercise jurisdiction over Kim outweighs the interest of any other state in doing the same.  For these reasons, this Court does have jurisdiction over Kim.

## VI.  CONCLUSION

For all of the foregoing reasons, Calkins respectfully requests that this Honorable Court deny Defendants' Motion to Dismiss Count VIII.

Respectfully submitted,

*/s/ Brian D. Spitz*
Brian D. Spitz (0068816)
Trisha M. Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com
          trisha.breedlove@spitzlawfirm.com

*Attorneys for Plaintiff Diane Calkins*

---

[75] *See Koster v. Am. Lumermen's Mut. Cas. Co*., 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) (noting a plaintiff's "presumed advantage" of being able to litigate in his or her "home forum").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2024, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

*/s/ Brian D. Spitz*
Brian D. Spitz (0068816)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
