UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DIANE CALKINS,** | ) | CASE NO.1:24CV00074 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| **DANAHER CORP., ET AL.,** | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Brett Cornell's Motion to Dismiss Plaintiff's Amended Complaint (ECF # 12) and Defendant Patricia Kim's Motion to Dismiss Plaintiff's Amended Complaint (ECF # 13). For the following reasons, the Court grants Defendant Kim's Motion for Lack of Personal Jurisdiction and grants in part and denies in part Defendant Cornell's Motion.

According to her Amended Complaint, Plaintiff Diane Calkins ("Calkins") was employed by Defendant Danaher Corporation ("Danaher") as Senior Director of Global Pricing Transfer in 2004 until her termination in 2022. At the time of her termination, Calkins was 54 years old. In her eighteen years with Danaher, Calkins received only positive reviews and had no disciplinary history. However, in March of 2022, Calkins was demoted to the position of Senior Director of Tax DBS and Transformation. Calkins alleges the decision to demote her was made by Danaher, Defendant Brett Cornell, a manager at Danaher and Washington, D.C. resident and Defendant

Patricia Kim, also a manager at Danaher and a resident of New York. Calkins alleges both Cornell and Kim were also employers. Defendants replaced Calkins with Adam Tursi, a significantly younger male. According to Calkins, both Cornell and Kim participated in the decision to replace Calkins with Tursi. Calkins alleges her demotion was an adverse employment action and was made based on her age and sex.

On September 13, 2022, Calkins alleges her employment with Danaher was terminated and both Cornell and Kim participated in the decision to terminate her employment. Again, the Amended Complaint alleges this second adverse employment action was based on Calkins' age and sex.

The next day, Defendants offered Calkins a transfer agreement that would have required her to work for a new employer, PwC, in exchange for a separation payment of $314,794.00 and a pro rata portion of her annual incentive bonus in the amount of $54,637.00 if accepted within thirty days of the offer. Calkins signed the transfer agreement that same day.

However, the next day, Defendants offered Calkins a different transfer agreement with decidedly less favorable terms for Calkins. The Amended Complaint alleges Defendants Kim and Cornell participated in both transfer agreements.

Calkins' Amended Complaint alleges a claim for Age Discrimination in violation of the Age Discrimination in Employment Act ("ADEA") against Danaher (Count I); Age Discrimination against all Defendants in violation of Ohio law O.R.C.§ 4112.02(A) (Count II); Gender Discrimination in violation of Title VII against Danaher (Count III); Gender Discrimination in violation of Ohio law O.R.C. § 4112.02(A) against all Defendants (Count IV); Breach of Contract against Danaher (Count V); Promissory Estoppel against Danaher (Count

VI); Unjust Enrichment against Danaher (Count VII) and Aiding, Abetting and Inciting Discrimination against Kim and Cornell in violation of Ohio law O.R.C. § 4112.02(J) (Count VIII).

**Defendant Cornell's Motion**

According to Cornell, Calkins' claims against him for unlawful gender and age discrimination and aiding and abetting discrimination must be dismissed because Ohio law has been amended to prohibit such claims against a manager or supervisor who is not an "employer."

Prior to 2021, Ohio law allowed actions against supervisors or managers for unlawful discrimination in employment because Ohio law defined "employer" as "the state, any political subdivision of the state, any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." This statute, the Ohio Fair Employment Practices Act ("FEPA") was distinguished from Title VII by the Ohio Supreme Court in *Genaro v. Cent. Transp., Inc.,* 703 N.E.2d 782, 787–88, wherein the Court held that, in contrast to Title VII, FEPA authorized employment discrimination claims against supervisors. However, in 2021 the Ohio General Assembly, in response to the *Genaro* decision, enacted the Employment Law Uniformity Act ("ELUA") to eliminate the individual liability of supervisors by removing the language "any person acting directly or indirectly in the interest of an employer." This amendment brought the FEPA definition of "employer" more closely in line with that found in Title VII, which has been interpreted to exclude individual supervisor liability if the supervisor or manager is not an "employer".

Cornell cites the Court to the express legislative intent of the General Assembly in enacting ELUA, which reads:

3

> The General Assembly, in amending section 4112.01 and division (A) of section 4112.08 of the Revised Code pursuant to this act, hereby declares its intent to supersede the effect of the holding of the Ohio Supreme Court in *Genaro v. Central Transport, Inc.,* 84 Ohio St.3d 293 (1999) and to follow the holding in *Wathen v. General Electric Co.,* 115 F.3d 400 (1997) regarding the definition of 'employer' for purposes of Chapter 4112. of the Revised Code. The General Assembly further declares its intent that individual supervisors, managers, or employees not be held liable under Chapter 4112 of the Revised Code for unlawful discriminatory practices relating to employment that are described in division (A)(24)(a) of section 4112.01 of the Revised Code, as amended by this act.

Acts 2020, HB 352, § 3.

Calkins' Amended Complaint alleges claims against Cornell based solely on his role and actions as a supervisor and/or manager. Although the Amended Complaint alleges Cornell was an employer, there are no factual allegations supporting Cornell's role as an employer. Therefore, Cornell moves the Court to dismiss all of Calkins' claims against him.

**Kim Motion**

Kim relies on the same arguments based on the ELUA Amendment that Cornell asserts, but Kim also alleges Calkins cannot show the Court has personal jurisdiction over her. Kim resides in New York and has no Ohio contacts sufficient to satisfy Ohio's Long-Arm statue or Due Process. She includes her Declaration attesting to her lack of Ohio contacts. She declares that her work was directed to Danaher's office in Washington D.C., not Ohio. Moreover, she is not a supervisor or a manager with Danaher but is in-house counsel and merely drafted the agreements at issue. As a result, Kim moves to dismiss Calkins' claims against her for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and under Fed. R. Civ. P. 12(b)(6) because she is not a supervisor, manager or employer and her actions were done in the course and scope of her employment.

4

**Calkins' Opposition**

Calkins agrees that ELUA removed supervisor and manager liability for some claims of discrimination under Ohio law but vigorously disputes the scope and extent of the application of ELUA. Starting with the plain language of O.R.C. § 4112.08, Calkins argues that the Ohio General Assembly made clear that ELUA did not prohibit all causes of action against supervisors or managers for employment discrimination. Instead, by it own terms it applies only to "certain" actions for discrimination.

Specifically, Calkins alleges that her claim for aiding and abetting discrimination survives a motion to dismiss because O.R.C. § 4112.02(J) expressly permits claims against "any person" as opposed to those claims that may only be asserted against employers.

Moreover, Calkins argues Kim has sufficient contacts with the State of Ohio such that personal jurisdiction over her comports with Ohio law and Due Process.

**LAW AND ANALYSIS**

**Fed.R.Civ.P. 12(b)(6) Standard of Review**

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990).

The United States Supreme Court, in *Ashcroft v. Iqbal* 556 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950.

When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

**Personal Jurisdiction**

Fed. R. Civ. P. 12(b)(2) authorizes dismissal of a complaint for lack of personal jurisdiction. The plaintiff bears the burden of showing that a federal court has personal jurisdiction over the defendant. However, when the court relies solely on written materials and affidavits, that burden is relatively slight; and the plaintiff need only make a prima facie showing that personal jurisdiction exists. *Air Prods. & Controls, Inc. v. Safetch Int'l, Inc.*, 503 F.3d 544 549 (6th Cir.2007). Here, Kim offers her declaration attesting to the lack of business dealings in Ohio and any contacts with Ohio arising out of the facts in this case. Nonetheless, the court is obligated to view the pleadings and affidavits in a light most favorable to the plaintiff; and when the court disposes of a Rule 12(b)(2) motion without an evidentiary hearing, it does not consider

contrary facts proffered by the party seeking dismissal. *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017); *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir.1998); *see CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262-63 (6th Cir.1996).

"A court has three different paths to resolve a Rule 12(b)(2) motion: (1) 'decide the motion upon the affidavits alone'; (2) 'permit discovery in aid of deciding the motion'; or (3) 'conduct an evidentiary hearing to resolve any apparent factual questions.'" *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.,* 539 F. Supp. 3d 822, 827 (S.D. Ohio 2021) quoting *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991). "Where the motion will be decided on the affidavits alone -- as the Court will do here -- a plaintiff need only make a prima facie showing of personal jurisdiction." *Premier,* 539 F. Supp.3d 827 citing *Bridgeport Music, Inc. v. Still N The Water Publ'g,* 327 F.3d 472, 478 (6th Cir. 2003).

The Court will decide the issue on the briefs and declaration alone. Although Calkins bears the burden of showing the Court has personal jurisdiction over Kim, that burden is "relatively slight."

In deciding whether a court possesses personal jurisdiction over the parties, the Court applies a two-step inquiry. The Court must consider whether a plaintiff's contacts with the forum state comport with Due Process and whether Defendant's conduct satisfies one of the provisions on Ohio's Long-Arm statute. See *Gunn v. E-Verifile.com, Inc.*, No. 1:18CV457, 2019 WL 1071205, at *2 (N.D. Ohio Mar. 7, 2019) citing *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota,* 545 F.3d 357, 361 (6th Cir. 2008). Federal courts first apply the law of the forum state when determining whether personal jurisdiction exists. *IHF Ltd. v. Myra Bag*, 391 F. Supp. 3d 760, 767 (N.D. Ohio 2019) citing *Mid-West Materials, Inc. v. Tougher Indus., Inc.,* 484

F. Supp. 2d 726, 729 (N.D. Ohio 2007) (citing *Youn v. Track, Inc.,* 324 F.3d 409, 417 (6th Cir. 2003).

Because the Court holds it lacks personal jurisdiction over Kim, it will only address the failure to state a claim arguments as they relate to Cornell.

**Ohio Law and Individual Liability for Discrimination by Managers and Supervisors**

According to the Amended Complaint, Calkins alleges claims against all Defendants, including Cornell, for Age Discrimination in violation of § 4112.01 *et seq*. The Amended Complaint expressly reads at Count II that Defendants violated by § 4112.02(A) by engaging in an adverse employment action against Calkins and by engaging in disparate treatment against Calkins based on her age. (Amended Complaint ¶ 159-160).

Count IV of the Amended Complaint alleges Gender Discrimination against all Defendants including Cornell under § 4112.01 *et seq*. for adverse actions in violation of § 4112.02(A) and for their disparate treatment of Calkins based on her gender.

Finally, Calkins asserts a claim at Count VIII for Unlawful Aiding, Abetting and Inciting of Discrimination against Cornell in violation of § 4112.02(J).

Calkins further asserts that Cornell is an employer (Amended Complaint ¶ 13). But these conclusory statements are unsupported by any factual allegations. Rather, they are contrasted by allegations that Cornell, at all times herein, acted in the course and scope of his employment with Danaher. (Id at ¶ 11). In addition, the Amended Complaint alleges Cornell, at all times herein, was a managers and/or supervisor at Danaher "who acted directly or indirectly in the interest of Danaher." (Id ¶ 12).

Instead of arguing that Cornell is an employer such that liability on all discrimination

claims would survive a motion to dismiss or citing the Court to allegations in the Amended Complaint supporting her claim that Cornell is an employer, Calkins limits her arguments to the viability under Ohio law of her claim of aiding or abetting discrimination under § 4112.02(J) against Cornell.

Ohio's FEPA anti-discrimination law at § 4112.02(A) reads:

It shall be an unlawful discriminatory practice:

> (A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Because (A) applies only to "employers" we next look to the statutory definition found at O.R.C. 4112.01(A)(2) which EULA amended to read as "the state, any political subdivision of the state, or a person employing four or more persons within the state, and any agent of the state, political subdivision, or person." It eliminated from the definition of employer "any person acting directly or indirectly in the interest of an employer."

In case there was any doubt that the General Assembly intended to eliminate supervisor and manager liability, it included in the statutory language of § 4112.08 the following unequivocal language:

> However, no person has a cause of action or claim based on an unlawful discriminatory practice relating to employment described in division (A)(24)(a) of section 4112.01 of the Revised Code against a supervisor, manager, or other employee of an employer unless that supervisor, manager, or other employee is the employer. Nothing in this division abrogates statutory claims outside this chapter or any claims of liability that exist against an individual at common law.
>
> (B) The procedures and remedies for unlawful discriminatory practices relating to

9

employment in this chapter are the sole and exclusive procedures and remedies available to a person who alleges such discrimination actionable under this chapter.

Correspondingly, O.R.C. 4112.01(A)(24) reads:

(24) "Unlawful discriminatory practice relating to employment" means both of the following:
(a) An unlawful discriminatory practice that is prohibited by division (A), (B), (C), (D), (E), or (F) of section 4112.02 of the Revised Code;
(b) An unlawful discriminatory practice that is prohibited by division (I) or (J) of section 4112.02 of the Revised Code that is related to employment.

As noted earlier, the Ohio General Assembly expressly stated its intent to eliminate supervisor and manager liability for certain discrimination claims. Thus, Ohio now expressly prohibits manager and supervisor liability for employment discrimination claims brought under § 4112.01(A)24(a). This now applies to claims brought for discriminatory acts described in § 4112.02 (A), (B), (C), (D), (E) and (F).

Section (A) applies to discrimination by an employer based on race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, relating to discharge without just cause, refusing to hire, or otherwise discriminating against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment. It applies to an employment agency or personnel placement service (B), labor organizations (C) and organizations that provide apprentice programs (D).

Section (E) prohibits employers or prospective employers from engaging in certain activities such as the collecting, advertising, recording of an applicant's racial, gender, age, religion and disability information etc... Finally, (F) places certain prohibitions on prospective employees from publishing ads that reveal their own or their desired sex, race or other protected

10

characteristics for a prospective employers.

However, the amendment was limited in application to claims under(A)(24)(a) and did not apply to claims under (A)(24)(b), which bars "An unlawful discriminatory practice that is prohibited by division (I) or (J) of section 4112.02 of the Revised Code that is related to employment." These claims include retaliation under (I) and aiding and abetting discrimination under (J). [1]

Calkins does not dispute and in fact, repeatedly acknowledges that § 4112.08 expressly proscribes individual liability of managers and supervisors for discrimination in employment claims brought under 4112.02(A). See Brief in Opposition pg 6, 7 & 13. This conclusion has been repeatedly found by courts in Ohio and within the Sixth Circuit. See *Burch v. Ohio Farmers Ins. Co.* 211 N.E. 3d 202 (Ohio App. 5th Dist 2023) (holding that under EULA, an individual supervisor may only be liable for discrimination if they are an employer or the claim concerns retaliation for opposing discrimination or aiding, abetting, or inciting a discriminatory practice or obstructing a person from complying with the Ohio Civil Rights law. See also *Williams v. Barton Malow Co.*, 581 F. Supp.3d 923, 927 (N.D. Ohio 2022), (holding that certain discrimination claims against individual supervisors, managers and employees were eliminated by H.B. 352 but it did not eliminate individual liability under § 4112.02(I) & (J)); *Argyriou v. David A. Flynn, Inc.*, No. 4:19-CV-1878, 2021 WL 766865, at *15 (N.D. Ohio Feb. 26, 2021) ("What is clear is that Section 4112.02(J) on its face applies to persons—unlike

---

[1] An Amicus Brief filed in the case at bar by the Ohio Employment Lawyers Association, argues that the Ohio General Assembly intentionally limited EULA to claims under 4112.01(A(24)(a) against employers and did not extend its limitations to claims under 4112.01(A)(24)(b) as these claims apply to "persons."

Section 4112.02(A), which applies only to employers."). *Gibbs v. Meridian Roofing Corp.*, No. 1:17-cv-245, 2017 WL 6451181, at *6 (S.D. Ohio Dec. 18, 2017); accord *Siwik v. Cleveland Clinic Found.*, No. 1:17-cv-1063, 2019 WL 1040861, at *27 (N.D. Ohio Mar. 5, 2019) ("§ 4112.02(J) does provide for employees...to be held liable for aiding and abetting its employer's discriminatory or retaliatory practice.").

The parties dispute the holding in *Sherman v. Public Employees Retirement System,* Case No. 2:22CV04161, 2023 WL 6307632, (S.D Ohio Sept. 28, 2023) wherein the court held that the plaintiff's claims against individual managers and supervisors brought under § 4112.02(I) and (J) were barred by ELUA. However, the Court holds this ruling appears to have been the result of the court erroneously reading § 4112.01(A)(24)(b) as if it were contained within § 4112.01(A)(24)(a). As a result, the Court does not find its rationale persuasive.

The Court holds that Calkins has failed to assert facts sufficient to support her conclusory allegation that Cornell is an employer under § 4112.01. Moreover, she has waived any argument to the contrary by failing to address it in her Brief in Opposition. As the Sixth Circuit instructs, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.." See *Barany-Snyder v. Weiner,* 539 F.3d 327, 331 (6th Cir. 2008) (citation and internal quotation marks omitted).

Upon consideration of the plain statutory language and relevant caselaw, the Court holds that Ohio law proscribes individual liability for managers and supervisors who are not employers for discrimination claims brought under § 4112.02(A). Therefore, the Court grants Cornell's Motion to Dismiss Counts II and IV against him.

However, the Court denies Cornell's Motion to Dismiss Count VIII against him as Ohio

statutory law expressly permits individual claims for unlawful aiding and abetting discrimination against "persons" under the plain language of § 4112.02(J). Moreover, the EULA Amendment at § 4112.08 expressly limited its application to "unlawful discriminatory practices relating to employment described in division (A)(24)(a) of section 4112.01." O.R.C. 4112.08 (A). However, claims for unlawful retaliation and aiding and abetting discrimination in employment are found in § 4112.02(J) and apply to "persons." Thus, these claims remain unaffected by EULA under its plain language. Courts that have considered this issue have almost unanimously held the same.

Cornell further argues that even if § 4112.01(A)(24)(b) allows claims against persons for aiding and abetting discrimination in employment under § 4112.02(J) it does not allow for such claims when those individuals are acting in the course and scope of their employment. However, the plain language of § 4112.02(J) allows claims against persons who aid, incite, compel or coerce any discriminatory act prohibited by FEPA, persons who obstruct or prevent any person from complying with this chapter or any order issued under it or any persons who directly or indirectly commit any act declared by this section to be an unlawful discriminatory practice. Given such broad application, Calkins' Amended Complaint alleges sufficient acts by Cornell as an active participant in the adverse employment actions and termination decision such that her claim at Count VIII states a plausible claim against him under§ 4112.02(J).

Therefore, the Court denies Cornell's Motion to Dismiss Count VIII of Calkins' Amended Complaint.

**Personal Jurisdiction and Kim**

"To establish personal jurisdiction over a defendant, the Court must find that (1) the

defendant is amenable to service of process under the State's long-arm statute; and (2) the exercise of personal jurisdiction is proper under the federal Due Process Clause." *Nottingham-Spirk Design Assocs., Inc. v. Halo Innovations, Inc.,* 603 F. Supp. 3d 561, 566 (N.D. Ohio 2022) *citing Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). "Even if a defendant's contact with the State of Ohio satisfies Ohio's long-arm statute, personal jurisdiction fails unless exercising jurisdiction over the defendant comports with traditional notions of fair play and substantial justice." *J.M. Smucker Co. v. Hormel Food Corp.,* 526 F. Supp. 3d 294, 300 (N.D. Ohio 2021).

"Due process requires that an out-of-state defendant have 'minimum contacts' with the forum state sufficient to comport with 'traditional notions of fair play and substantial justice.'" *Blessing v. Chandrasekhar,* 988 F.3d 889, 904 (6th Cir. 2021) quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A "minimum contacts" analysis "looks to the defendant's contact with the forum state itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014). "The relationship must arise out of contacts that the "defendant himself" creates with the forum State." The defendant must "purposefully avail[ ] [herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," which "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal citations omitted).

"A defendant may be subject to personal jurisdiction even if she does not physically enter

the forum state, if her 'efforts are 'purposefully directed' toward residents of another State,'" *Blessing*, 988 F.3d at 904 quoting *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174, but "the plaintiff cannot be the only link between the defendant and the forum," *Walden,* 571 U.S. at 285, 134 S.Ct. 1115.

"Personal jurisdiction falls into two categories: general and specific." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011)).

Kim moves to dismiss Calkins' Amended Complaint for lack of personal jurisdiction. Kim alleges she has no continuous or systematic contact with the State of Ohio nor is she a resident of Ohio. She works for Danaher which is located in Washington, D.C., so none of her work is directed towards Ohio. Kim attaches her Declaration wherein she declares she is not a resident of Ohio, has never lived in Ohio, owns no property in Ohio and has no bank accounts in Ohio. (Kim Decl. ¶ 4-7). Therefore, she argues the Court has no general personal jurisdiction over her.

Kim further contends that it would violate Due Process for the Court to exercise personal jurisdiction over her because Calkins' Amended Complaint provides no facts of actions directed towards Ohio other than conclusory allegations regarding Kim's misdeeds.

Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state. *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002), citing *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir.1992). General jurisdiction is proper only where "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over

15

the defendant even if the action is unrelated to the defendant's contacts with the state." *Bird*, 289 F.3d at 873 (citation omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile: for a corporate defendant, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop tires operations, S.A. v. Brown,* 564 U.S. 915, 924 (2011). The Supreme Court identified these corporate paradigm forums as the state in which it is incorporated or has its principal place of business. *Id.*

General jurisdiction over Kim is lacking in the instant matter since the only evidence before the Court demonstrates that Kim's contacts with Ohio are not sufficiently "continuous and systematic."

The Sixth Circuit has articulated a three-part test for determining whether the exercise of specific jurisdiction comports with Due Process: "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968).

A non-resident defendant "purposefully avails" itself of the privileges in the forum state where it "reach[es] out beyond one state and create[s] continuing relationships and obligations with citizens of another state." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000). Kim's declaration shows that she did not purposefully avail herself by reaching out to Ohio nor

16

did she create any continuing relationship with or obligation to Calkins by her actions. In addition, Kim's work on the agreement at issue was directed to Danaher in Washington, D.C., not Ohio. Kim's relevant contractual activities were not performed in the State of Ohio.

Calkins argues the Court has specific jurisdiction over Kim because of Kim's participation in: the decision to terminate Calkins; the creation of the First Termination Agreement; in the First Termination Agreement; deciding the language of the Second Termination Agreement; the Second Termination Agreement; and terminating Calkins due to her age and gender. (Amended Complaint ¶'s 69, 76-78-80, 91, 93-96, 118, 121, 126, 129).

By creating the documents in question and participating in her termination, Calkins argues Kim actions satisfy the purposeful availment component of Due Process. Moreover, by participating in her termination, Kim's conduct arises from acts directed to Ohio. The Court's exercise of personal jurisdiction over Kim is reasonable given that Kim's participation in the decisions to terminate Calkins resulted in harm to Calkins who resides in Ohio. Lastly, Calkins contends Ohio has a societal and economic interest in providing a forum for those who work within its bounds to recover losses due to wrongful termination from unlawful discrimination in violation of Ohio laws.

Because the Court has decided to issue its decision on the Amended Complaint, Declaration and briefs, Calkins burden to show personal jurisdiction over Kim is slight. "Under the prima facie standard, 'it [still] remains the plaintiff's burden,' (internal citation omitted) and in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *H&H Wholesale Services, Inc., v. Kamstra Int'l., B.V., et al.,* No. 21-1533, 2021

WL 5505495 (6th Cir. Nov. 24, 2021) quoting *Theunissen*, 935 F.2d at 1458.

Here, Calkins does not provide an affidavit or declaration, but the Court must still construe all factual allegations asserted by Calkins in her Amended Complaint as true. See *Palnik v. Westlake Ent., Inc.,* 344 F. App'x 249, 251 (6th Cir. 2009) (noting that a court cannot consider an affidavit or declaration by a defendant that refutes factual allegations in a complaint as dispositive of personal jurisdiction but also noting that a plaintiff's complaint must allege specific facts that establish with reasonable particularity personal jurisdiction over a defendant.)

However, when a declaration or affidavit is offered by a defendant challenging personal jurisdiction, a plaintiff cannot simply rely on its allegations in a complaint but must point the court to facts that support personal jurisdiction. See *NTCH-W. Tenn, Inc. v. ZTE Corp.,* 761 F. App'x 485, 487 (6th Cir. 2019). ("ZTE Corp.'s submission of affidavits shifted NTCH-TN's burden of proof. Now, though NTCH-TN still needed to make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal,, it could not rely on its complaint to do so—it had to by affidavit or otherwise, set forth specific facts showing that the court ha[d] jurisdiction over ZTE Corp.").

A review of Calkins' Amended Complaint reveals it is utterly devoid of any factual allegations supporting personal jurisdiction over Kim in Ohio. There is not one allegation of any activity Kim took that occurred in Ohio. There is no allegation that any decision Kim allegedly participated in occurred in Ohio. There is no allegation that the Agreements Kim participated in drafting were written in Ohio, were signed in Ohio or were even delivered to Ohio. Likewise, Calkins makes no allegation that Kim traveled to Ohio, communicated with Calkins via phone, text, email or otherwise in Ohio. As such, Calkins cannot show Kim purposefully availed herself

18

of the privilege of acting in Ohio and engaging in any activity in Ohio that would make the exercise of personal jurisdiction over Kim appropriate for Due Process purposes.

The same pleading failures doom Calkins' arguments regarding the second and third due process factors under established Sixth Circuit precedent. See *Conn v. Zakharov,* 667 F.3d 705, 713 (6th Cir. 2012). Because she alleges no facts that Kim engaged in any activities in Ohio or directed any activities to Ohio, Calkins cannot show her cause of action arose from Kim's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable but again, without some specific allegation of Kim engaging in activities directed to Ohio, she fails to meet her burden to show such a connection.

Therefore, the Court holds Calkins has failed to meet her burden demonstrating the Court's exercise of personal jurisdiction would comport with Due Process.

Because she cannot meet her burden to show the Court has personal jurisdiction over Kim the Court need not proceed to examine Ohio's Long-Arm statute. "[I]f jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa." *Straight v. LG Chem, Ltd.,* 640 F. Supp. 3d 795, 802 (S.D. Ohio 2022) quoting *Conn,* 667 F.3d at 711–12.

Plaintiff has not rebutted the averments in Kim's Declaration. Moreover, the sworn statements in Kim's affidavit militate against a finding of specific personal jurisdiction over her. The Court, without any contrary factual showing, cannot find that Kim purposefully availed herself of the privilege of acting or causing consequences in Ohio; nor that her acts or consequences have a substantial enough connection with Ohio to make the exercise of

jurisdiction over her reasonable. See *Southern Machine Co. v. Mahasco Indus.*, 401 F.2d 374, 380-81 (6th Cir.1968).

Therefore, for the foregoing reasons, the Court grants Defendant Cornell's Motion to Dismiss Counts II and IV of Plaintiff's Amended Complaint, but denies Cornell's Motion to Dismiss Count VIII. The Court grants Kim's Motion to Dismiss for lack of personal jurisdiction.

IT IS SO ORDERED.


Date: July 2, 2024          /s/Christopher A. Boyko
                            CHRISTOPHER A. BOYKO
                            United States District Judge